OPINION
{¶ 1} Appellant Ronny Black appeals a judgment of the Stark County Common Pleas Court convicting him of grand theft (R.C. 2913.02), and theft as a fifth degree felony (R.C. 2913.02):
 ASSIGNMENTS OF ERROR {¶ 2} I. THE TRIAL COURT ABUSED ITS DISCRETION AND ERRED AS A MATTER OF LAW WHEN IT MADE THE STATE'S WITNESS A COURTS WITNESS IN VIOLATION OF RULE 607 OF THE OHIO RULES OF EVIDENCE.
 {¶ 3} II. THE APPELLANT BLACK WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL, A VIOLATION OF HIS SIXTH AMENDMENT RIGHTS AS GUARANTEED BY THE U.S. CONSTITUTION.
 {¶ 4} III. THE TRIAL COURT ERRED BY FINDING APPELLANT BLACK GUILTY MANIFESTLY AGAINST THE WEIGHT OF THE EVIDENCE.
{¶ 5} In October of 2000, Ronald Patterson worked at White Horse Scrap Metal. On two occasions, appellant and Herb Watson delivered aluminum cans in the back of a J J Refuse garbage truck. The cans had been baled, and were delivered after hours. According to Patterson, it was unusual to get a load of cans at night. He observed that both appellant and Watson seemed nervous. Patterson observed copper bales at the company during this time period, which was unusual, as they normally did not deal in copper.
{¶ 6} Michael Jenkins worked for Alliance Recycling Center in October of 2000. Appellant arrived at the company in a pickup truck, and attempted to sell Jenkins some copper material. The copper material was a single bale, belonging to J J Refuse. Jenkins was not interested in buying the copper from appellant.
{¶ 7} On October 7, 2000, Gary Mayle drove a garbage truck for J 
J Refuse. Appellant and Herb Watson also drove garbage trucks for J J Refuse. At the end of collecting garbage, the procedure was to file a baling maintenance sheet. Employees were required to keep track of the time they left the company, the time they got back, the miles on the truck when they left, and the miles upon return. The driver was also required to empty the truck after completing the shift.
{¶ 8} Early in October of 2000, Mayle had a conversation with appellant and Watson at the end of his shift. Mayle had pulled his truck in and was getting ready to dump the garbage. Appellant and Watson offered to dump Mayle's truck for him. Mayle agreed and left. When Mayle arrived at work the next day, he noticed that the odometer of his truck had fifteen extra miles on it. When he looked in the back of his truck, he noticed loose aluminum cans. He concluded that someone drove his truck the night before, and reported the unusual occurrences to his boss, Neil Smith.
{¶ 9} Neil Smith was the plant manager of J J Refuse. On October 7, he noticed a lot of loose aluminum cans laying on the floor where the baled recyclables were kept, which was unusual. He also noticed that eleven bales were missing, and called the police. The estimated value of the missing aluminum bales was $500 per bale. The copper bales were valued at $1200 to $1500 per bale. Based on the type of wire and straps holding them together, which were unique to J J's baler, Smith identified bales that were later recovered from Alliance Recycling and Whitehorse Scrap Metal as belonging to J J Refuse.
{¶ 10} Upon contacting the police, Smith provided the names of appellant and Watson as possible suspects, and gave police a piece notebook paper recovered from Watson's vehicle stating, "Sorry I couldn't get the cans, Phil." The police eventually recovered three bales of copper from Whitehorse Scrap Metal, and one bale of copper in Alliance.
{¶ 11} Appellant and Herb Watson were arrested for the theft of copper and aluminum from JJ Refuse. In a tape-recorded statement, Watson admitted that he and appellant stole the metal and sold it to Whitehorse Scrap Metal and Alliance Recycling.
{¶ 12} The case proceeded to trial in the Stark County Common Pleas Court. Appellant was convicted of one count of grand theft, a felony of the fourth degree, and one count of theft, a felony of the fifth degree. He was sentenced to seventeen months incarceration for grand theft, and eleven months incarceration for theft, to be served consecutively. He was also ordered to make restitution to the victim.
 I
{¶ 13} In his first assignment of error, appellant argues that the court erred by calling Herb Watson as the court's witness, and permitting both parties to cross-examine him. Appellant argues that the court's ruling circumvented the requirements of Evid.R. 607, which requires a showing of surprise and affirmative damage before a party may cross-examine its own witness by means of a prior inconsistent statement.
{¶ 14} Evid.R. 614 (A) provides that the court may, on its own motion or at the suggestion of a party, call witnesses, and all parties are entitled to cross-examine the witnesses so called. The decision to call an individual as a witness of the court lies in the sound discretion of the trial court. State v. Adams (1980), 62 Ohio St.2d 151.
{¶ 15} The cases cited by appellant to support his argument are all cases applying Evid.R. 607, which was not applicable to in the instant case. The fundamental difference between Evid.R. 607 Evid.R. 614 lies in who calls the witness. The requirements of Evid.R. 607 apply only when a party desires to cross-examine a witness called by the party by use of a prior inconsistent statement. However, when the court chooses to call a witness, within its discretion, pursuant to Evid.R. 614, both parties are permitted to impeach the witness. Appellant has not demonstrated that the court abused its discretion in calling Watson as its own witness. The court instructed the jury that they could not consider the prior statements given by Herb Watson to the police as substantive evidence, but the prior statement was merely evidence to consider in judging his credibility as a witness in the case. Tr. 471-72. The trial court complied with all requirements of Evid.R. 614, and because the witness was not called by the State, the State did not need to comply with Evid.R. 607 before impeaching Watson with his prior inconsistent statement.
{¶ 16} The first assignment of error is overruled.
 II
{¶ 17} Appellant argues that counsel was ineffective for failing to challenge the valuation of the aluminum cans by information freely available on the Internet at the U.S. Geological Survey website. This information was not part of the record at trial, but is attached to appellant's brief. Because the information is not part of the record, we cannot consider it on appeal. Appellant has failed to demonstrate that counsel was ineffective for failing to challenge the valuation of the cans, as there is nothing in the record to demonstrate the valuation as presented was incorrect.
{¶ 18} The second assignment of error is overruled.
 III
{¶ 19} Appellant argues that the conviction is against the manifest weight of the evidence.
{¶ 20} Weight of the evidence concerns the inclination of the greater amount of credible evidence offered at trial to support one side of the issue rather than the other. State v. Thompkins (1997),78 Ohio St.3d 380, 1997-Ohio-52. In considering a claim that a judgment is against the manifest weight of the evidence, the court of appeals sits as a thirteenth juror in weighing the credibility of witnesses and assessing the weight of the evidence. Id. The discretionary power to grant a new trial should only be exercised in the exceptional case in which the evidence weighs heavily against the conviction. Id.
{¶ 21} Appellant argues that there is no evidence to tie him to the theft of the cans, as all evidence supports the conclusion that Watson committed the crime. He argues that to find him guilty requires piling inference upon inference.
{¶ 22} There was ample circumstantial evidence presented to convince the average mind that appellant participated in the thefts. Gary Mayle identified both appellant and Watson as offering to dump his truck. Ronald Patterson testified that on two occasions, appellant and Watson delivered baled cans after hours, including the copper bales which the company normally did not deal in. Michael Jenkins testified that appellant arrived at his company in a pickup truck, and attempted to sell him copper material. There was sufficient evidence tying appellant to the theft of the cans, and the judgment of the conviction is not against the manifest weight of the evidence.
{¶ 23} The third assignment of error is overruled.
{¶ 24} The judgment of the Stark County Common Pleas Court is affirmed.
By GWIN, J., HOFFMAN, P.J., and BOGGINS, J., concur
 JUDGMENT ENTRY
For the reasons stated in the Memorandum-Opinion on file, the judgment of the Stark County Common Pleas Court is affirmed. Costs to appellant.