OPINION
Defendant, Robert Charles Mason, appeals from a judgment of the Franklin County Municipal Court which revoked his probation and imposed his previously suspended sentence.
Defendant advances two assignments of error, as follows:
 1. The trial court erred in revoking appellant's probation for engaging in an offensive course of conduct as the phrase fails to clearly state the prohibited conduct.
 2. The trial court erred in finding that the defendant violated the terms of his "probation" and that his actions as he left the courtroom at the conclusion of his sentencing hearing violated the "no contact" provision of his probation.
On March 2, 2001, defendant was charged with four counts of telecommunications harassment stemming from a series of messages left on the telephone answering machine of Kathleen Pickup, the mother of defendant's child. On June 6, 2001, defendant entered a guilty plea to one count of telecommunications harassment; the other three charges were dismissed as part of the plea bargain. The trial court sentenced defendant to one hundred eighty days in the Franklin County Correction Center. The trial court suspended the entire one hundred eighty days and placed defendant on probation for a period of eighteen months with special conditions requiring that defendant: (1) attend and complete anger management counseling; (2) obtain drug and alcohol assessment and complete any recommended treatment; and (3) have no contact with Kathleen Pickup.
The same day, defendant reported to the probation department and signed a document entitled "Probation Rules and Instructions," which included, in addition to the special conditions noted above, the following as a condition of probation:
 You shall not violate any law (Federal, State and Local) and not be engaged in an offensive course of conduct.
On June 12, 2001, pursuant to instructions ordered by the trial court, the probation department issued an allegation of probation violation contending that defendant had violated two conditions of his probation — that he not engage in an offensive course of conduct and that he have no contact with Kathleen Pickup.
Defendant stipulated to probable cause, and the matter proceeded to an evidentiary hearing on July 18, 2001. At that hearing, Ms. Pickup testified that on June 6, 2001, she and her mother, Cheryl Goodman, were seated in the hallway outside the courtroom in which defendant had just pled guilty to the telephone harassment charge. As defendant left the courtroom, he turned toward the women, smiled, and made a gesture with his right thumb and index finger as if he were shooting a gun at them. Ms. Pickup described defendant's gesture as having the index finger extended with the remaining fingers tucked back and the thumb coming down into contact with the index finger. He did not speak to either woman, nor did he make any movement toward them. He then turned and walked toward the elevators. According to Ms. Pickup, she was "scared to death because [defendant has] been physically abusive." (Tr. 7.)
Douglas Boatright, an attorney who was in the courthouse on an unrelated matter on June 6, 2001, testified that he observed the incident. Specifically, Mr. Boatright testified that when defendant exited the courtroom, he started to turn toward the elevators, but stopped to scan the hallway. He looked at Ms. Pickup and Ms. Goodman, sneered at them, fashioned his right hand into the shape of a gun, with the index finger extended like the barrel and the thumb up like the hammer, and moved his thumb up and down twice like he was shooting a gun at Ms. Pickup. Defendant then laughed and walked toward the elevators. Mr. Boatright interpreted the gesture made by defendant as one intended to intimidate or threaten Ms. Pickup. According to Mr. Boatright, Ms. Pickup seemed "quite shaken" by the incident. (Tr. 20.)
Vince Robinson, defendant's employer, testified that defendant frequently used a gesture involving the pointing of the right index finger and thumb as a means of greeting or acknowledgment. He further testified that he had never observed defendant make the gesture in an intimidating or threatening manner. Mr. Robinson admitted, however, that he did not observe the gesture defendant made toward Ms. Pickup on June 6, 2001.
Defendant testified that he observed Ms. Goodman smile and wave to him as he left the courtroom. In response, defendant smiled and waved back at her. He then turned and walked toward the elevators. According to defendant, the gesture he made toward Ms. Goodman was one he frequently used as a method of greeting and was not intended to threaten or intimidate Ms. Pickup.
At the conclusion of the hearing, the trial court determined that defendant had violated both conditions of probation as alleged by the probation department. Specifically, the court found that defendant's conduct constituted both an offensive course of conduct and a violation of the "no contact" order. In so finding, the court noted a "distinct difference" between the gestures demonstrated by Mr. Boatright and Mr. Robinson. (Tr. 47.) In particular, the court noted:
 * * * [T]he gesture that Mr. Robinson made was a pointing. I didn't see him shoot anybody once, let alone twice.
 Mr. Boatright's testimony was very clear. He demonstrated it verbally and reiterated that he pointed his index finger with the thumb up, and down comes the thumb on two occasions. That's not the way you say hello, I don't think. In fact, that's not even the way Mr. Robinson says he says hello.
 * * * If he pointed his finger in that direction, that's one thing. But * * * I've yet to hear of anybody saying, "Hi" to somebody by shooting at them or shooting in their direction. [Id.]
In addition to the foregoing comments, the court indicated that it did not believe defendant's version of the incident. The court further found that defendant's conduct was intended to intimidate or threaten Ms. Pickup and was particularly egregious because it occurred immediately after defendant had been placed on probation. Having determined that defendant violated the conditions of his probation, the trial court imposed the previously suspended one-hundred-eighty-day jail sentence.
By his first assignment of error, defendant contends that the trial court erred in revoking his probation based upon a finding that he engaged in an offensive course of conduct. Specifically, defendant contends that the phrase "engaging in an offensive course of conduct" is not sufficiently specific to permit its use as a predicate for probation revocation. Defendant further contends that holding him accountable to such a vague and general condition constitutes a violation of his due process rights. In essence, defendant challenges the condition of probation itself rather than the manner in which the trial court conducted the revocation hearing. As such, the alleged deprivation of defendant's due process rights occurred at the time the trial court placed him on probation — at sentencing. Accord State v. Green (1999), Lake App. No. 98-L-023.
It is well-established that an individual's rights, even constitutional rights, may be lost by a failure to assert them at the proper time. State v. Awan (1986), 22 Ohio St.3d 120, 122; State v. Hayes (2001), Wood App. No. WD-00-075. The June 6, 2001 entry suspending defendant's sentence and placing him on probation upon the condition that he refrain from engaging in offensive conduct constituted a final appealable order. R.C. 2951.10. Accordingly, defendant should have appealed the challenged condition of probation within thirty days of the June 6, 2001 entry. A review of the record reveals that no appeal was filed from that entry.[1]
Defendant's failure to challenge the condition of probation via an appeal of the June 6, 2001 entry prevents consideration of the matter in the present appeal. State v. Lepley (1985), 24 Ohio App.3d 237, 238; State v. Frambach (1993), Lorain App. No. 92CA005395; State v. Thompson (1999), Franklin App. No. 99AP-162; Hayes, supra; In re Andrew J. (2001), Huron App. No. H-01-021.
Even if this court were to conclude that a challenge to a condition of probation is an appropriate subject for review upon a revocation of probation, we find that defendant waived any such challenge when he failed to raise the issue at the probation revocation hearing. In Awan, supra, the Supreme Court of Ohio stated:
 The general rule is that "an appellate court will not consider any error which counsel for a party complaining of the trial court's judgment could have called but did not call to the trial court's attention at a time when such error could have been avoided or corrected by the trial court." * * * Likewise, "[c]onstitutional rights may be lost as finally as any others by a failure to assert them at the proper time." [Citations omitted; id. at 122.]
At the revocation hearing, defendant did not assert a due process challenge to the trial court's authority to revoke his probation. While defendant contested the factual allegations contained within the statement of violations, he did not argue to the trial court that the condition of refraining from engaging in an offensive course of conduct was impermissible such as to raise due process concerns. It was only after defendant's probation was revoked and he was ordered to serve his sentence that he raised the issue by filing an appeal. By failing to challenge the condition of probation in a timely manner, defendant has waived the issue for purposes of the instant appeal.
Finally, assuming, arguendo, that defendant had preserved this issue for review, we find that the trial court's decision finding defendant to be in violation of his probation based upon defendant's engaging in an offensive course of conduct did not, under the circumstances, constitute a due process violation. Initially, we note that defendant does not contest the trial court's factual findings related to the violation of this particular condition of probation. Defendant contends only that the condition that he refrain from engaging in offensive conduct is so unclear as to be an invalid basis for revocation.
As emphasized in Morrisey v. Brewer (1972), 408 U.S. 471, 480,92 S.Ct. 2593, probation revocation proceedings are not considered stages of criminal prosecution. State v. Bell (1990), 66 Ohio App.3d 52, 56. As such, due process requirements in probation revocation proceedings are more limited than the requirements for criminal prosecution proceedings. Id. Although the Morrisey court held that probation revocation proceedings require compliance with six minimum due process requirements,[2] defendant does not allege noncompliance with any of those requirements. Rather, defendant alleges a due process violation in the trial court's failure to state with specificity what type of conduct would constitute engaging in an offensive course of conduct. Under the circumstances of the instant case, a reasonable person in defendant's position should have been aware that "an offensive course of conduct" might well include making an intimidating and threatening gesture toward the victim of a crime to which he had pled guilty only minutes before.
The instant case is thus easily distinguishable from State v. Bickel (1991), 77 Ohio App.3d 26, the case relied upon by defendant. In that case, the defendant was alleged to have engaged in an offensive course of conduct in violation of his probation when he failed to comply with certain child support orders. For reasons not entirely clear from the opinion, the prosecution conceded that the phrase "offensive course of conduct" failed to clearly state the prohibited conduct. Id. at 30. We can only speculate that the prosecution so conceded because it is not at all clear that an order to refrain from engaging in an "offensive course of conduct" might include noncompliance with child support orders. In contrast, we agree with the state's contention in the instant case that the act of pretending to shoot someone — particularly when that act is committed in a courthouse, minutes after being sentenced for having harassed the very person you are pretending to shoot — clearly constitutes "an offensive course of conduct." Under such circumstances, we cannot say that the trial court's decision to revoke defendant's probation on the basis that his actions constituted "an offensive course of conduct" constituted a violation of defendant's due process rights. Accordingly, the first assignment of error is not well-taken.
By the second assignment of error, defendant contends that the trial court erred in finding that his actions violated the "no contact" condition of his probation.
The privilege of probation rests upon the probationer's compliance with the conditions of probation and any violation of those conditions may properly be utilized to revoke the privilege. Bell, supra, at 57. In a probation violation proceeding, the state need not prove the violation beyond a reasonable doubt. Rather, substantial evidence that a probationer willfully violated the terms of his or her probation is sufficient to support the revocation of probation. State v. Mingua (1974), 42 Ohio App.2d 35, 40. The decision whether to revoke probation rests within the sound discretion of the trial court. State v. McKnight (1983), 10 Ohio App.3d 312, 313. An "abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is arbitrary, unreasonable or unconscionable. State v. Adams (1980),62 Ohio St.2d 151, 157.
Defendant first urges a very literal definition of the term "contact." Specifically, defendant cites a definition of "sexual contact" found in R.C. 2907.01(B), which states: "[a]ny touching of an erogenous zone of another." Defendant argues that by analogy, the term "contact" as used in the condition of probation at issue requires some type of physical touching. We do not agree.
The court in Defiance v. Mohr (1991), Defiance App. No. 4-90-5, rejected a similar argument. In that case, defendant William Mohr pled guilty to a charge of disorderly conduct for obscenely gesturing and communicating unwarranted and abusive language to Tina Martin. His ten-day jail sentence was suspended on the condition that he have no contact with Ms. Martin for a period of one year. Less than one month later, Mohr saw Ms. Martin driving an automobile down the street. Mohr followed her in his vehicle, tailgating her car at speeds in excess of eighty-five miles per hour. As a result, Mohr's probation was revoked. On appeal, Mohr argued that he did not violate the "no contact" condition of his probation because he was not in "contact" with Ms. Martin. Mohr asserted the position that the term "contact" requires a condition of touching, proximity, association or connection. The court found tailgating Ms. Martin to be within her proximity or association and, thus, within the scope of the definition cited by Mohr. The court further determined that Mohr was aware at the time of sentencing that the court intended the term "contact" to include more than physical touching, given the nature of the crime to which he pled guilty.
Similarly, we believe that defendant, at the time of sentencing, was aware of the court's intention that the term "contact" was to include more than physical touching, given that the nature of the crime to which defendant pled guilty did not involve physical touching. Indeed, it is reasonable to assume that defendant was aware of the court's intention that the term "contact" would include threatening and/or intimidating gestures. See, also, State v. Dotson (1996), Clermont App. No. CA95-08-048 ("no contact" order violated by Dotson in leaving several profane and threatening messages on his ex-wife's telephone answering machine).
Defendant further contends that the trial court erred in finding that he violated the "no contact" order because the gesture he made was one he utilized over the years as a form of greeting and was not intended to threaten or intimidate Ms. Pickup. In support of his contention, defendant cites his own testimony and that of his employer, Mr. Robinson. As noted previously, however, the trial court expressly stated that it did not believe defendant's testimony. Further, the court noted the differences between the testimony of and gestures demonstrated by Mr. Robinson and Mr. Boatright and determined that Mr. Boatright's testimony was more credible. In addition, the court determined that defendant's conduct, even though it involved no verbal communication, was intended to intimidate and/or threaten Ms. Pickup.
The testimony presented at the hearing supports the trial court's findings. Both Ms. Pickup and Mr. Boatright testified that defendant fashioned his right hand into the shape of a gun and pretended to shoot Ms. Pickup. Ms. Pickup testified that she was "scared to death" by the incident. (Tr. 7.) Mr. Boatright testified that defendant sneered at Ms. Pickup and Ms. Goodman when he first saw them and laughed as he turned away after pretending to shoot Ms. Pickup. He further testified that Ms. Pickup seemed "quite shaken" by the incident. (Tr. 20.)
Based on the foregoing, we conclude that the state produced substantial evidence that defendant violated the "no contact" condition of his probation and that the trial court was within its discretion in revoking defendant's probation on that basis. Accordingly, defendant's second assignment of error is not well-taken.
For the foregoing reasons, we overrule both of defendant's assignments of error and affirm the judgment of the Franklin County Municipal Court.
Judgment affirmed.
BRYANT and LAZARUS, JJ., concur.
[1] While we are aware that the allegations of probation violation were filed on June 12, 2001, only six days after the judgment entry placing defendant on probation was filed, and well before the thirty-day appeal period expired, we are also mindful of the fact that the probation revocation hearing was not held until July 18, 2001, after the thirty-day appeal period expired.
[2] The six minimum due process requirements are: (1) written notice of the claimed probation violations; (2) disclosure to the probationer of evidence against him or her; (3) the opportunity to be heard in person and to present witnesses and documentary evidence; (4) the right to confront and cross-examine adverse witnesses; (5) a "neutral and detached" hearing body; and (6) a written statement by the factfinders as to the evidence relied on and reasons for revoking probation. State v. Bickel (1991), 77 Ohio App.3d 26, 34, citing Morrisey, supra, at 489.