JOURNAL ENTRY and OPINION
{¶ 1} A jury found defendant Nelson Wesley guilty of aggravated burglary and domestic violence in connection with an incident in which he kicked open the door to his girlfriend's apartment and took telephones and some clothing belonging to her. The eight assignments of error raised in this appeal primarily challenge evidentiary rulings by the court.
 {¶ 2} The state's evidence showed that Wesley and his girlfriend shared a duplex. A next-door neighbor heard Wesley standing outside the door to his girlfriend's apartment, arguing through the door that she should let him inside. When the girlfriend refused, Wesley began to pound on the door and raise his voice. The neighbor could not recall any specifics of what had been said, but had the sense that Wesley had been saying, "you better let me in." This commotion went on for five minutes. When the neighbor next saw the door to the girlfriend's apartment, she realized that the frame had been broken and the door was now open. She heard screaming from inside the apartment and called the police. The neighbor gave an emergency dispatcher a description of what had happened, and further described the car Wesley drove away in, including the license number.
 {¶ 3} The police officer who responded to the apartment found the girlfriend "very excited, upset, crying and I saw blood coming from her right ear on to her shirt." He also noticed that the door to the apartment had been very recently broken. When the officer questioned the girlfriend about the incident, she replied that Wesley had broken into the house because she refused to let him inside. Once inside, he "started slapping her around and as he left he stole a couple of her phones and some clothing and left the area." The girlfriend refused the officer's request that she receive medical assistance.
 {¶ 4} Another police officer on patrol heard the dispatch with a description of Wesley's car. He quickly spotted the car, in part because it was traveling fifty miles per hour in a thirty-five mile per hour speed zone. The officer called in the license plate and confirmed that the car belonged to Wesley. After he pulled Wesley's car to the side of the road, he asked Wesley to tell him what was going on. Wesley replied that "I kicked the door in. She wouldn't let me in and I kicked the door in." The officer found the two telephones and articles of clothing in Wesley's car.
 {¶ 5} Although the girlfriend told an officer that Wesley had struck her, she recanted that statement before trial. Testifying without objection as a court's witness, she agreed that she and Wesley had an argument and that Wesley had broken down the door, but denied any physical contact.
 I {¶ 6} Wesley first complains that the court erred by calling the girlfriend as a court's witness after she recanted her initial statement that he struck her. He claims this permitted the state to circumvent the Evid.R. 607 prohibition against impeaching a witness with a prior inconsistent statement except upon a showing of surprise and affirmative damage.
 {¶ 7} Wesley did not object to the court's decision to call his girlfriend as a court's witness, so we review this matter for plain error. Plain error does not exist under Crim.R. 52(B) unless, but for the error, the outcome of the trial clearly would have been otherwise. Crim.R. 30(A); State v. Long (1978), 53 Ohio St.2d 91, paragraph two of the syllabus. Moreover, we may only find plain error in the most exceptional of circumstances, having used the utmost caution in addressing the claimed error. Id., at paragraph three of the syllabus.
 {¶ 8} Evid.R. 614(A) provides that the court may, on its own or at the suggestion of a party, call witnesses, and all parties are entitled to cross-examine these witnesses. In State v. Mader
(Aug. 30, 2001), Cuyahoga App. No. 78200, we considered the issue of a court calling its own witness and made the following remarks:
 {¶ 9} "In this case, the State made a motion to call C as the court's witness on the basis that her trial testimony was expected to be different than some of her pretrial statements. C was an important eyewitness whose testimony could reasonably be found to be necessary to aid the jury in responsibly carrying out its fact-finding function. The reason the State requested the court to call C as a witness, rather than calling her as a witness itself, was to avoid being unable to test the credibility of her testimony by her prior out-of-court statements, just as in [State v.] Adams [(1980), 62 Ohio St.2d 151]. This reason was articulated to the jury, as required. Thus, the trial court did not err in calling C as its witness."
 {¶ 10} Nothing in the record suggests that a manifest miscarriage of justice occurred when the court called Wesley's girlfriend as a court's witness. Her refusal to testify to the physical harm aspect of the domestic relations charge was an obvious change from her prior story that Wesley had struck her. On that basis alone, the court would have been justified in calling her under Evid.R. 614(A). The lack of an objection merely reinforces the absence of exceptional circumstances sufficient to find the presence of plain error.
 II {¶ 11} Prior to trial, Wesley stipulated to a prior misdemeanor conviction for domestic violence. This stipulation was read to the jury. In addition, Wesley was on parole for other felony offenses. During the testimony of the officer who responded to the girlfriend's apartment, the officer mentioned that he had been trying to convince the girlfriend to seek medical treatment because it would be easier to make a case against Wesley. He went on to say that the girlfriend mentioned how "the system failed her all the time in the past and she says how Mr. Wesley was on parole * * *." Defense counsel immediately objected. At a sidebar conference, defense counsel noted that Wesley had stipulated only to a prior misdemeanor conviction for domestic violence, and that the officer's use of the word "parole" indicated a prior conviction other than domestic violence. The state suggested that the jurors might only have thought the word "parole" referred to the domestic violence conviction, not an unrelated felony. The court denied the motion for a mistrial and, following the state's line of reasoning, gave the jury a cautionary instruction that it should not consider the prior conviction for domestic violence as proof of the charged offense. Wesley claims that the curative instruction was ineffective.
 {¶ 12} The court did not err by refusing to grant a mistrial. We presume that the jury followed the judge's curative instruction. State v.DePew (1988), 38 Ohio St.3d 275, 284. That instruction took this form:
 {¶ 13} "Ladies and gentlemen of the jury, in the beginning of the case the Court read to you a stipulation with reference to a prior conviction that Mr. Wesley has for domestic violence. That stipulation was permitted to be presented to you for the purposes of establishing one of the elements of this charge but it should not be considered by you in your — it should not be used by you in your consideration of the defendant's guilt or innocence in this particular crime.
 {¶ 14} "Any indications about Mr. Wesley being on parole or probation should be stricken from your mind and should not be utilized in your determination of his guilt or innocence in this case."
 {¶ 15} Given the prior stipulation to a domestic violence conviction, the court's cautionary instruction made the best of the situation by suggesting to the jury that the parole referred to by the police officer was a parole for the prior domestic violence conviction. At the very least, the jury had no reason to think that the word "parole" referred to an offense other than the prior domestic violence conviction. We see no reasonable probability that the jurors would have ignored the court's instruction and taken it upon themselves to conclude that the reference to parole meant some offense other than the prior domestic violence conviction.
 III {¶ 16} When instructing the jury, the court said that there was evidence tending to indicate that Wesley fled from the vicinity of the crime, and that if the jury were to conclude that Wesley fled from the scene and that conduct was not satisfactorily explained, it could consider that flight as circumstantial evidence of consciousness of guilt. Wesley objected to this instruction and argues there was no evidence to support this conclusion.
 {¶ 17} The rule is that the court must give all jury instructions that are relevant and necessary to weighing the evidence. State v. Comen
(1990), 50 Ohio St.3d 206, 210. An instruction must be "correct, pertinent, and timely presented" to the general charge. See State v.Guster (1981), 66 Ohio St.2d 266, 269.
 {¶ 18} Signs showing the accused's consciousness of guilt have generally been admissible in criminal trials: "The innocent man is without [consciousness of guilt]; the guilty man usually has it. Its evidential value has never been doubted." 1A Wigmore on Evidence (Tillers rev. 1983), Section 173. The trier of fact is permitted to infer guilt from guilty behavior that tends to show the accused's consciousness of guilt. One type of guilty behavior is flight from a crime scene. Flight from a crime scene has so long been considered a reliable indication of consciousness of guilt, that the reasons underlying its use have become the stuff of proverbs: "[t]he wicked man flees though no one pursues, but the righteous are as bold as a lion." See Proverbs 28:1.
 {¶ 19} Flight means some escape or affirmative attempt to avoid apprehension. It can take the form of fleeing from the police or eyewitnesses to changing or disguising one's physical characteristics after the fact. See, e.g., United States v. Felix-Gutierrez (C.A.10, 1991), 940 F.2d 1200, 1207.
 {¶ 20} The court should not have given the instruction on flight. The state requested the charge on evidence that Wesley had been traveling fifty miles per hour in a thirty-five mile per hour speed zone at the time a police officer spotted his car. This did not constitute a desire to avoid apprehension sufficient to prove consciousness of guilt. Nothing at trial tended to show that Wesley was traveling at that speed in order to avoid being captured. There was no evidence that the police were pursuing Wesley at the time they spotted his car. It would have been a different matter with testimony showing that Wesley sped up after being ordered to stop. But without evidence of that kind, there was no connection between Wesley's speed and a desire not to be apprehended.
 {¶ 21} Despite the court's error in charging the jury, we cannot say that the error prejudiced Wesley. The only disputed evidence against Wesley was whether he inflicted any physical harm to the girlfriend. Despite her recantation of physical harm, other competent evidence showed that the girlfriend had not only been bleeding, but affirmatively told the police that Wesley had struck her. The jury instruction on flight did not change these facts or make them any less probative of guilt. Under the circumstances, the error was harmless beyond a reasonable doubt.
 IV {¶ 22} During closing arguments, the state noted the girlfriend's testimony and, after having said that it gave it some thought, concluded that "love was blind." The state then said, "[t]he remainder of her entire testimony, I believe, and I think as well as you, will conclude that its not believable, not credible and inconsistent with the testimony of the three police officers and the neighbor next door." Wesley claims these remarks were improper because they constituted the prosecuting attorney's personal belief and opinion of the girlfriend's credibility.
 {¶ 23} Wesley concedes that he did not object to these remarks, so we can only review them for plain error. The girlfriend's credibility problems were obvious. She initially told the police that Wesley struck her and later denied ever making that allegation. Moreover, by the time of trial, she admitted that she and Wesley were engaged to be married. Finally, she denied, despite substantial evidence to the contrary, that her ear had been bleeding after the incident. With this in mind, we cannot say that the prosecuting attorney's remarks in closing argument were so prejudicial that the outcome of trial would have been otherwise.
 V {¶ 24} Wesley next argues that the court erred by denying his Crim.R. 29 motion for judgment of acquittal because the state failed to present sufficient evidence of aggravated burglary. Although he admits he broke down the door to the duplex, he claims he did so to retrieve his keys, not to steal any items from their shared residence.
 {¶ 25} As applicable to this case, R.C. 2911.11(A)(1) defines aggravated burglary as trespassing by force into an occupied structure with intent to commit any criminal offense, and inflicting physical harm on another. Wesley conceded the force element of aggravated burglary (he admits breaking down the door), so the remaining issue is whether he broke down the door in order to commit an offense inside the duplex.
 {¶ 26} The court must deny a motion for judgment of acquittal if, after viewing the evidence in a light most favorable to the state, reasonable minds could come to different conclusions as to whether each element of the offense had been proven beyond a reasonable doubt. SeeState v. Bridgeman (1978), 55 Ohio St.2d 261.
 {¶ 27} The court did not err by denying the motion for judgment of acquittal because reasonable minds could differ on whether the state presented evidence to establish that Wesley entered the duplex with the intent to commit a criminal offense. Wesley could have entered the premises to commit one of two offenses: the domestic violence or theft of telephones and clothing. Although there was no specific testimony to show when Wesley struck the girlfriend, our standard of review entitles the state to the inference that Wesley struck the girlfriend after he broke down the door. The neighbor testified that she heard screaming from inside the duplex after Wesley broke down the door, suggesting an altercation occurred after Wesley's entry. Moreover, reasonable minds could find that Wesley struck the girlfriend after entering the premises based on the officer's testimony that after responding to the scene he saw "blood coming from" the girlfriend's right ear. This created the very strong inference that any injury she suffered had been very recent. A second fact corroborating the timing of the assault was the officer's request that the girlfriend receive medical attention. This created the inference that her injuries were fresh.
 {¶ 28} But even if there had been no evidence of when the domestic violence occurred, the state still presented evidence which would have established a theft offense. The officer who responded to the duplex said that the girlfriend told him "* * * Mr. Wesley had broken into the house because she wouldn't let him in. He started slapping her around and as he left he stole a couple of her phones and some clothing * * *." The officer's recollection that the girlfriend used the word "stole" was sufficient, in light of our standard of review under Bridgeman, to show that Wesley committed a theft offense.
 VI {¶ 29} Wesley next claims that counsel was ineffective for failing to object and preserve error. The substance of these claims have been addressed and rejected in the preceding assignments of error and bear no repeating other than to say that nothing in the record shows that counsel violated an essential duty to his client.
 VII {¶ 30} During trial, the court permitted the state to play a tape recording of the 911 call the neighbor made to report the altercation occurring in the girlfriend's house. Wesley maintains that the prejudicial effect of the tape far outweighed it probative value, particularly since the neighbor told the emergency operator that "he's killing her."
 {¶ 31} The decision to admit or exclude relevant evidence rests within the sound discretion of the trial court. State v. Hanna,95 Ohio St.3d 285, 2002-Ohio-2221, at ¶ 28. The court did not abuse that discretion by permitting the jury to hear the neighbor's call as the call was relevant to establish that an altercation was occurring inside the duplex after Wesley had broken down the door. The neighbor's call was also relevant to show the severity of the altercation, thus dispelling the girlfriend's recantation.
 VIII {¶ 32} Finally, Wesley maintains that the court erred by failing to exclude from the jury the stipulation to his prior conviction for domestic violence. The state argued, and the court agreed, that domestic violence cases constitute an exception to the rule that a stipulation to a prior offense negates the need to inform the jury of that prior offense.
 {¶ 33} We recently addressed this argument in State v. Arnold
(Jan. 24, 2002), Cuyahoga App. No. 79280, and held that when, as here, the existence of a prior conviction for domestic violence enhances the degree of a subsequent domestic violence offense, it is an essential element of that offense that the state must prove beyond a reasonable doubt, regardless of whether the accused has stipulated to the prior conviction. See, also, State v. Skala, Cuyahoga App. No 80331, 2002-Ohio-2962 at ¶ 10. The court did not err by permitting Wesley's stipulation to his prior domestic violence offense to be heard by the jury.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
KENNETH A. ROCCO, P.J., and COLLEEN CONWAY COONEY, J., CONCUR.