[Cite as *State v. Rawls*, 2016-Ohio-7962.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 104191**

# STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

# DAVID RAWLS

DEFENDANT-APPELLANT

## JUDGMENT:
### REVERSED AND REMANDED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-96-341281-ZA

**BEFORE:** Stewart, J., Kilbane, P.J., and Blackmon, J.

**RELEASED AND JOURNALIZED:** December 1, 2016

**ATTORNEY FOR APPELLANT**

Donald R. Caster
Ohio Innocence Project
University of Cincinnati
P.O. Box 210040
Cincinnati, OH 45221


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor

Christopher D. Schroeder
Anthony Thomas Miranda
Assistant County Prosecutors
Justice Center, 9th Floor
1200 Ontario Street
Cleveland, OH 44113

MELODY J. STEWART, J.:

{¶1} Appellant David Rawls appeals from the denial of his application for postconviction DNA testing. For the reasons discussed below, we reverse the decision of the trial court and remand for further proceedings consistent with this opinion.

{¶2} Rawls was arrested on June 20, 1996, on charges related to an aggravated robbery of a Marc's Discount Drug Store. Following an indictment, the charges were amended to two counts of aggravated robbery, in violation of R.C. 2911.01, and two counts of kidnapping, in violation of R.C. 2905.01. Each count carried a firearm specification and an aggravated felony specification for a previous conviction for aggravated robbery. Rawls's case proceeded to a jury trial in January 1997. The following is a summary of the facts elicited from the trial that are relevant to the present appeal.[1]

---

[1] A full discussion of the facts leading to Rawls's convictions is provided in his direct appeal, *State v. Rawls*, 8th Dist. Cuyahoga No. 72051, 1998 Ohio App. LEXIS 1895 (April 30, 1998).

{¶3} On the afternoon of June 16, 1996, a man wearing a dark jacket and a black cap that read "police" across the front, knocked on the door to the money room of the Marc's store located on Lakeshore Boulevard in Euclid, Ohio. Sharon Wheeler, a store employee who was working alone inside the money room on that day, opened the door after observing the "police" inscription on the man's hat. When Wheeler opened the door, the man placed a gun in Wheeler's face, shoved her back into the money room, closed the door, and covered her mouth with his hand. The assailant forced Wheeler to the floor where he bound her hands and feet with red T-shirts that had been taken off a rack of clothing in the store. Shortly thereafter, Peter Thomas, the employee supervisor of the store knocked on the door to the money room. When the assailant opened the door, he immediately pointed his gun at Thomas and pulled him inside. The assailant then ordered Thomas, at gunpoint, to fill a large plastic bag with cash. Thomas did as he was told. When finished, the assailant forced Thomas to the floor and also bound his hands and feet with T-shirts. The assailant proceeded to strike Wheeler and Thomas in the head with his gun, causing severe head lacerations to both victims. The assailant took the bag of money, which totaled over $8,000, and ran out of the store.

{¶4} When police arrived, Thomas told them that he was familiar with the assailant as a person who, in the days before the robbery, had been hanging around the store and telling employees that he was the new "floor cleaner." Thomas told police that aside from seeing the perpetrator walking around and observing the store under the pretense of being a floor cleaner, he also saw the perpetrator in the break room talking to employees. Further interviews with employees who had talked to the man, revealed that the man carried a pistol and was telling employees that he "was a part-time security guard, and also ran the floors," and was also asking if there was "a money room around."

{¶5} Another store employee, Joe Jones III, the store's greeter, testified that he saw the perpetrator run out of the Marc's store carrying a large bag and a red T-shirt. According to Jones, the perpetrator was wearing dark clothing with a gun sticking out his pocket and a police cap. Jones testified that the perpetrator was familiar to him because he had spoken to him just before the robbery when the man was using the payphone outside of the store. Jones testified that the man asked him which store manager was on duty that day, and also spoke to him for a few minutes about football and basketball.

{¶6} On this information, detectives assigned to the case telephoned the maintenance company that the Marc's store had contracted to clean its floors. The detectives learned that a man fitting the description of the perpetrator had been employed there and that this person was David Rawls. After gathering this information, the detectives assembled a photo array of potential suspects, which included Rawls. The photos were shown to six store employees, including Thomas, who stated that they had seen the perpetrator either on the day of the robbery or in the days prior. All six employees picked Rawls's picture out of the array as the person they had seen. At trial, both Thomas and Jones identified Rawls as the person who committed the robbery.

{¶7} In addition to the eyewitness identifications, the detectives obtained certain phone numbers from a pager recovered from Rawls at the time of his arrest. Two of the numbers in the pager corresponded to telephone numbers called from the Marc's payphone on the day of the robbery.

{¶8} Rawls was found guilty on all charges and their corresponding firearm specifications, and was sentenced to a total, indeterminate term of 18 to 50 years in prison. Rawls's direct appeal of his convictions was affirmed with the exception of a limited remand for reconsideration of sentencing. *Rawls*, 8th Dist. Cuyahoga No. 72051, 1998 Ohio App. LEXIS 1895 (April 30, 1998).

{¶9} Prior to trial, and in the 20 years since, Rawls has maintained his innocence. On August 27, 2015, Rawls filed an application for postconviction DNA testing. In it, Rawls requested the DNA testing of the T-shirts that were used by the perpetrator in the commission of the robbery to bind the feet and hands of the victims. The state opposed the application on the basis that despite due diligence on the part of the assistant prosecuting attorney ("APA"), the APA was unable to locate the T-shirts, and that even if the evidence were available, the evidence would not be outcome determinative and therefore did not support an application for DNA testing. The APA submitted his report of the steps he took to locate the evidence at issue, pursuant to R.C. 2953.75(B).

{¶10} In light of the APA's report, Rawls asked the court for an evidentiary hearing to determine the location of the T-shirts. In his argument, Rawls cited to numerous cases across the country where evidence was found, despite initial claims that evidence was lost or destroyed, when courts held a hearing where custodians testified regarding their efforts to locate the evidence. In its opposition brief, the state argued that, even if the shirts could be located, a touch DNA sample was likely to have degraded over 19 years to the point where testing was not possible and, even if DNA was found, it would not be outcome determinative because it is possible that others touched the shirts while they were on display in the store. The state also focused on the steps it took to find the evidence, including looking through the county evidence room, and contacting past evidence custodians and prosecutors.

**{¶11}** The court denied Rawls's request for an evidentiary hearing and further denied his motion for DNA testing. In its decision, the court stated that the application failed to meet two of the six statutory factors necessary for DNA testing under R.C. 2953.74. Specifically, the court concluded that Rawls failed to show that the evidence he sought still existed, in light of the APA's report that it could not be found. The decision went on to state that even if the T-shirts still existed, Rawls could not demonstrate that the results from any DNA testing would be outcome determinative under R.C. 2953.74(C)(5).

**{¶12}** On appeal, Rawls raises two assignments of error for our review. The first argues that the trial court erred by declining to hold an evidentiary hearing. His second assignment of error argues that the trial court erred in finding that DNA testing of the T-shirts would not be outcome determinative in his case.

**{¶13}** Appellate courts review a trial courts decision to accept or reject an eligible inmate's application for DNA testing for an abuse of discretion. R.C. 2953.74(A); *State v. Ayers*, 185 Ohio App.3d 168, 2009-Ohio-6096, 923 N.E.2d 654 (8th Dist), ¶ 12. An abuse of discretion is "more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980).

**{¶14}** Ohio's statutory scheme set forth in R.C. 2953.71 et seq., for post conviction DNA testing, outlines certain factors that must be satisfied before a trial court "may accept" an eligible inmate's application for DNA testing. The parties do not dispute that Rawls qualifies as an eligible offender for DNA testing under the statute. Accordingly, the court needed only to find the statutory factors under R.C. 2329.74(C) applied before granting the applications.

**{¶15}** R.C. 2329.74(C) states:

If an eligible offender submits an application for DNA testing under section 2953.73 of the Revised Code, the court may accept the application only if all of the following apply:

(1) The court determines pursuant to section 2953.75 of the Revised Code that biological material was collected from the crime scene or the victim of the offense for which the offender is an eligible offender and is requesting the DNA testing and that the parent sample of that biological material against which a sample from the offender can be compared still exists at that point in time.

(2) The testing authority determines all of the following pursuant to section 2953.76 of the Revised Code regarding the parent sample of the biological material described in division (C)(1) of this section:

> (a) The parent sample of the biological material so collected contains scientifically sufficient material to extract a test sample.

> (b) The parent sample of the biological material so collected is not so minute or fragile as to risk destruction of the parent sample by the extraction described in division (C)(2)(a) of this section; provided that the court may determine in its discretion, on a case-by-case basis, that, even if the parent sample of the biological material so collected is so minute or fragile as to risk destruction of the parent sample by the extraction, the application should not be rejected solely on the basis of that risk.

(c)   The parent sample of the biological material so collected has not degraded or been contaminated to the extent that it has become scientifically unsuitable for testing, and the parent sample otherwise has been preserved, and remains, in a condition that is scientifically suitable for testing.

(3)   The court determines that, at the trial stage in the case in which the offender was convicted of the offense for which the offender is an eligible offender and is requesting the DNA testing, the identity of the person who committed the offense was an issue.

(4)   The court determines that one or more of the defense theories asserted by the offender at the trial stage in the case described in division (C)(3) of this section or in a retrial of that case in a court of this state was of such a nature that, if DNA testing is conducted and an exclusion result is obtained, the exclusion result will be outcome determinative.

(5)   The court determines that, if DNA testing is conducted and an exclusion result is obtained, the results of the testing will be outcome determinative regarding that offender.

(6)   The court determines pursuant to section 2953.76 of the Revised Code from the chain of custody of the parent sample of the biological material to be tested and of any test sample extracted from the parent sample, and from the totality of circumstances involved, that the parent sample and the extracted test sample are the same sample as collected and that there is no reason to believe that they have been out of state custody or have been tampered with or contaminated since they were collected.

**{¶16}** In his first assignment of error, Rawls takes issue with the court's conclusion that he failed to meet factor (C)(1) above, which requires that evidence subject to the request for DNA testing still be in existence at the time of the application. Rawls contends that the court should have held an evidentiary hearing before concluding that evidence did not exist.

**{¶17}** Although a court must duly consider whether the eligible offender meets all of the statutory requirements for DNA testing, R.C. 2359.73(D) specifically provides that "[t]he court is not required to conduct an evidentiary hearing in conducting its review of, and in making its determination as to whether to accept or reject, the application." Moreover, as a corollary to R.C. 2953.74(C)(1), the postconviction DNA testing statute requires that the state exercise reasonable diligence in determining whether the biological material subject to the offender's request for testing was collected from the crime scene or victim of the offense, and whether the same biological material exists at the time of the application for testing. R.C. 2953.75(A). In conducting his/her search, the prosecuting attorney is instructed to investigate with reasonable diligence all relevant sources which includes but is not limited to: (1) all prosecuting authorities from the original case, (2) all law enforcement authorities involved in the original investigation, (3) all custodial authorities involved at any time with the biological material, (4) the custodian of all agencies, (5) all crime laboratories involved at any time with the biological material, and (6) all other reasonable resources. *Id.* The definition of "reasonable diligence" provided for in the statute states,

"Reasonable diligence" means a degree of diligence that is comparable to the diligence a reasonable person would employ in searching for information regarding an important matter in the person's own life.

R.C. 2953.71(Q). The prosecutor must address in a report filed with the trial court the existence and availability of the evidence and, if necessary, outline the state's efforts to locate the evidence if the evidence cannot be found. R.C. 2953.75(B).

{¶18} In this case, the APA submitted a report of the state's efforts to locate the T-shirts used to tie the victims. The report detailed how the state contacted the Euclid Police Department, including the department's records office and property room. According to the report, the "[r]ecords [o]ffice stated that they [sic] switched computer systems approximately two years ago and do not still have anything in their [sic] possession from 1996." The report further stated that "Thomas Yanacek with the [p]roperty room checked Euclid Police records pertaining to Rawls case * * * and was unable to locate any evidence currently in the possession of the Euclid Police Department." Yanacek did find a copy of the initial, six-page, handwritten police report and Rawls's personal history sheet; however, neither indicted whether T-shirts were collected as evidence from the crime scene. According to the APA's report,

> Yanacek further indicated that Euclid's computer records show no physical evidence associated with that report. Yanacek stated that he believed any evidence associated with Rawls' case had probably been destroyed because the case had been adjudicated many years ago.

The report also indicated that the state contacted the department's police chief, Tom Brickman. Chief Brickman spoke to a law clerk at the prosecutor's office and explained that the department did not have any evidence in its possession related to the Rawls case. Attached to the report were two email letters from Brickman to the Ohio Innocence Project that stated that the department did not have the evidence and that the inventory log of collected evidence could not be located.

{¶19} The APA's report also detailed how the state could not find an inventory log, chain of custody log, or any other documents relating to the existence or location of the T-shirts in its digital discovery database, and how a personal inspection of the Cuyahoga County property room revealed no items related the case. The report further related how the state contacted the prosecutor who tried the case in 1996, the criminal clerk of courts for the county, and the Eighth District Court of Appeals Clerk's Office, but was unable to locate the evidence or any documentation indicating its possible whereabouts.

**{¶20}** Notably, however, the APA's investigation of the clerk's office uncovered a Euclid police report attached to a motion Rawls filed in 2008. The police report stated that "[t]wo items of clothing used in the attempt to tie up the victims was held." The APA admitted in his investigation report that the police report was not included among the information provided by the Euclid police department to the state in its initial inquiries. Moreover, the APA's report also stated, that upon reviewing the docket and pleadings in a 2010 Section 1983 case filed by Rawls in federal court against the city of Euclid, the state discovered that the city of Euclid admitted that "two pieces of clothing were held for evidence[.]" At oral argument, the prosecutor defending the present appeal, conceded that the two pieces of clothing referred to in the pleadings were most likely the T-shirts.

**{¶21}** Despite the many places searched and people contacted, the APA's report does not reflect that the state met its burden of investigating, with reasonable diligence, all relevant sources that may have come into contact with evidence from this case. Indeed, we do not see how the court could have concluded, without a hearing, that the T-shirts do not exist.

**{¶22}** Of particular concern is the limited nature in which the state investigated the Euclid police department's records, custodians, and property room. Although the APA explains in his report that the state contacted the department's records office, the report does not indicate with whom the APA spoke, that person's job title and/or duties, or the person's relationship to the records. The person's responsibilities with respect to the department's records is relevant to the quality and reliability of the information provided to the APA. Moreover, the APA's report appears to take the spokesperson's explanation that the office changed computer systems two years prior and no longer has anything from 1996 at face value. The report offers no explanation regarding whether the APA asked any follow-up questions about the system change or what might have happened to the outdated records (e.g., were they destroyed, kept on an external hard drive, sent to the county clerk's office, sent to a dead files location etc.). Nor does the report explain the department's record retention policy or whether the APA ever inquired into whether the department had a retention policy. The APA's report in this regard does not reflect reasonable diligence on the part of the state to locate the records of Rawls's case that would lead to the whereabouts of the evidence in question.

**{¶23}** Furthermore, the APA states that Thomas Yanacek with the Euclid property room checked the police records pertaining to Rawls's case and was unable to locate any evidence. Nevertheless, Yanacek was able to find a copy of a handwritten police report authored by one of the detectives on the case, and was also able to check computer records for evidence associated with the police report. Although the APA in this instance provides the court with the contact person's name, the APA offers no explanation of Yanacek's job duties and responsibilities with regard to the property room. Additionally, there is no indication in the APA's report whether Yanacek physically searched the evidence room for the T-shirts, or simply ended his search once computer records showed no physical evidence associated with the case. The very fact that Yanacek was able to locate at least some electronic/computer records of the case further calls into question whether the spokesperson in the records office did a comprehensive search for information related to Rawls's case or whether he stopped once the system indicated the records were not available. While we recognize that the separate offices might not have integrated computer systems, reasonable diligence requires that the APA at least ask and include this fact within the report. Further troubling is the fact that the APA's report relies on Yanacek's opinion that "any evidence associated with Rawls's case had probably been destroyed," without following-up on whether the department has an evidence destruction policy and, if so, what it entails. Again, this shows a lack of reasonable diligence on the part of the state.

**{¶24}** Crucial to this court's disposition on appeal is the fact that not a single person, custodian, or department can say what happened to the T-shirts that were indisputably collected as evidence in this case. This is troublesome in light of the fact that the APA's report tends to show that the Euclid police department either had knowledge of, or possessed records pertaining to, the collection and storage of the T-shirts as recently as 2010 when Rawls filed his Section 1983 action against the city of Euclid in federal court. And in the six years since Rawls's federal suit, the information regarding the collection and storage of the T-shirts cannot be located, without sufficient explanation or inquiry. Although the trial court must find that an eligible offender's application for DNA testing satisfies the statutory mandates of R.C. 2953.74(C), which includes a finding that the evidence still exists, the burden of proving the evidence cannot be located despite reasonably diligent efforts rests squarely on the state. *See State v. Ustaszewski*, 6th Dist. Lucas No. L-05-1226, 2006-Ohio-329, ¶ 20. In its journal entry denying the application for DNA testing, the trial court relied solely on the APA's report for its conclusion that the requested evidence does not exist. We find that the court acted unreasonably in reaching this conclusion without a hearing when the APA's report establishes that the state conducted what could be viewed as a superficial investigation of the Euclid police department's records and property offices. Accordingly, we remand to the trial court for a hearing.

**{¶25}** Rawls's second assignment of error is also well taken. In addition to denying Rawls's application for failing to satisfy R.C. 2953.74(C)(1), the trial court stated, without further explanation, that even if the evidence were to exist, the results of DNA testing would not be outcome determinative under R.C. 2953.74(C)(5). This court has previously held that a trial court must state its reasons for reaching its conclusion that DNA testing would not be outcome determinative. *State v. Richard*, 8th Dist. Cuyahoga No. 99449, 2013-Ohio-3918, ¶ 8.

**{¶26}** Judgment reversed and remanded.

It is ordered that appellant recover of appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MELODY J. STEWART, JUDGE

MARY EILEEN KILBANE, P.J., and
PATRICIA ANN BLACKMON, J., CONCUR