[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
[1] First Federal Savings Bank of Ironton filed a notice of substitution of party with this Court. First Federal Savings Bank of Ironton is the successor in interest to Lincoln Savings Loan Assn. by way of merger.
 DECISION AND JUDGMENT ENTRY
{¶ 1} This matter presents a timely appeal from a judgment rendered by the Lawrence County Court of Common Pleas overruling Defendant/Third Party Plaintiff-Appellant Brian Marshall's (Marshall) objections to the magistrate's decision, and adopting that decision in its entirety.
 {¶ 2} Marshall asserts that the trial court erred by finding that his mortgage on certain real property, now owned by Third-Party Defendants-Appellees John R. Weber and Carol Ann Weber (Webers), was no longer valid. Specifically, Marshall argues that there was no accord and satisfaction of his mortgage, because neither he nor Defendants-Appellees Harold Damron and Kim Damron (Damrons) intended the proceeds from an unsecured promissory note from Plaintiff-Appellee Lincoln Savings 
Loan Assn. (Lincoln) to satisfy Marshall's mortgage.
 {¶ 3} Lincoln filed a cross-appeal to the trial court's judgment awarding it $83,393.33 against Marshall and the Damrons. However, Lincoln recently merged with First Federal Savings Bank of Ironton (First Federal). As successor in interest to Lincoln, First Federal and Marshall reached an agreement concerning the collection of the funds due under the promissory note. As part of the agreement, First Federal has voluntarily dismissed its cross-appeal.
 {¶ 4} For the following reasons, we find that Marshall's arguments lack merit. Therefore, we affirm the judgment of the trial court.
 I. Proceedings Below {¶ 5} Defendants-Appellees Harold Damron and Kim Damron were living in Lawrence County during the early half of the 1990's. Harold had dreams of making it big as a country singer in Nashville. In order to fulfill this dream, he traversed Ohio performing with his band. Times eventually became rough for the Damrons. Harold's career never took off as expected, and the Damrons experienced financial difficulties. In order to meet their financial obligations, the Damrons turned to their friend, Defendant/Third Party Plaintiff-Appellant Brian Marshall, for assistance.
{¶ 6} Marshall initially loaned the Damrons $14,000 to assist Harold in fulfilling his Nashville dream. Later, in November 1993, Marshall loaned the Damrons additional funds. To evidence these transactions, the Damrons signed a promissory note for the total amount loaned, $34,000, at an interest rate of 9 percent. To secure payment of the note, Marshall required the Damrons to give him a mortgage on their real estate located in Lawrence County, Ohio. Marshall filed and recorded his mortgage (Marshall mortgage) in Lawrence County.
{¶ 7} In 1995, Harold's career had yet to flourish, and the Damrons never made any payments towards the promissory note signed in favor of Marshall. At this time, both Marshall and First National Bank, who owned the first mortgage on the Damrons' property, initiated a foreclosure action against the Damrons to collect on their respective loans.
{¶ 8} Subsequently, the Damrons met with Russell Mittendorf, the senior loan officer of Plaintiff-Appellee Lincoln Savings Loan Assn., and negotiated with him to refinance their first mortgage. They also discussed with him the possibility of obtaining an unsecured loan in order to save their property from foreclosure by Marshall. He informed the Damrons that Lincoln would be unable to loan them additional funds due to their past credit problems, even though James D. Damron, Harold's father, agreed to co-sign the note. However, Lincoln did inform the Damrons that it would provide the unsecured financing, so long as Marshall also agreed to sign as co-maker on the loan.
 {¶ 9} On November 3, 1995, the Damrons, James D. Damron, and Marshall each co-signed a promissory note for a $43,300 unsecured loan from Lincoln (unsecured note) at an interest rate of 22 percent for a period of one hundred twenty months. Subsequently, $40,000, minus a $30 fee, was transferred to Marshall's bank account in Florida. The Damrons retained the balance of the loan proceeds.
 {¶ 10} On November 30, 1995, Marshall signed a Subordination Agreement in favor of Lincoln, subordinating his mortgage on the Damrons' property to that of the Lincoln refinancing mortgage. On December 1, 1995, the Damrons and Lincoln closed on the refinancing mortgage, which amounted to a $60,000 loan from Lincoln to the Damrons to pay off the first mortgagee, First National Bank. Even though it now held the refinanced mortgage on the Damron property, Lincoln never recorded the Marshall Subordination Agreement.
 {¶ 11} In December 1997, the Damrons sold their property to Third Party Defendants-Appellees John R. Weber and Carol Ann Weber. The Damrons signed a warranty deed and affidavit that the only existing lien on the property was the Lincoln mortgage. Apparently, however, the closing agent learned of the Marshall mortgage prior to closing. Nevertheless, the Webers closed on the property and were given the deed to the property. Thereafter, Lincoln received a payoff for their mortgage from the proceeds of the sale and the Damrons retained the balance. Marshall, on the other hand, received nothing from the sale proceeds to satisfy his mortgage.
 {¶ 12} Meanwhile, from January 1996 until December 1997, the Damrons had been making erratic payments on the unsecured note, thereby incurring significant late fees and interest charges. The Damrons' last payment on the note occurred on December 9, 1997. Subsequently, Lincoln declared the note in default and issued demand upon the Damrons for payment of the entire balance. It was not until February 1999, however, that Lincoln contacted Marshall to inform him that the unsecured note was in default, and that it was now looking to him for satisfaction of the balance. Evidently Marshall intended to foreclose on the Damrons' property and use the proceeds to pay the balance of the unsecured note. However, it was at this point that Marshall first learned that the Damrons had sold the property to the Webers.
 {¶ 13} As a result of the default, Lincoln filed suit against the Damrons, Marshall, and James D. Damron for $83,393.37, the total balance due on the note at that time. Marshall, on the other hand, filed a third-party complaint against the Webers to foreclose upon the property they had purchased from the Damrons, which Marshall claims was still subject to his mortgage, the balance of which was $73,844.38. The Webers also filed a cross claim against the Damrons for breach of the warranty of title.
 {¶ 14} On October 1, 2001, a bench trial was held before the magistrate of the Lawrence County Court of Common Pleas. On November 7, 2001, the magistrate filed his decision awarding Lincoln $83,393.37. The magistrate also dismissed Marshall's complaint against the Webers, ruling that the Marshall mortgage on the Webers' property had been satisfied by the $39,970 Marshall received from Lincoln's unsecured loan that Marshall had co-signed with the Damrons. The magistrate further awarded the Webers $1,000 against the Damrons for breach of the warranty of title.
 {¶ 15} Marshall filed objections to the magistrate's decision in the trial court, but failed to similarly file either a transcript of the magistrate's hearing or an affidavit in lieu of a transcript. On December 12, 2001, a hearing was held in the Lawrence County Court of Common Pleas to consider Marshall's objections. The trial court overruled the objections, and, after making an independent determination of the facts and applicable law, the trial court adopted the magistrate's decision in its entirety.
 II. The Appeal {¶ 16} Marshall timely filed his appeal, raising two assignments of error.
 {¶ 17} First Assignment of Error: "The trial court erred when it found that the Marshall mortgage had been satisfied because said finding was against the manifest weight of the evidence."
 {¶ 18} Second Assignment of Error: "The trial court erred in finding Brian Marshall no longer had a valid mortgage."
 {¶ 19} Both of Marshall's assignments of error raise essentially the same issues of law and fact. Therefore, we will consider them conjointly.
 1. Standard of Review {¶ 20} Marshall's assignments of error are based upon the magistrate's findings of facts, to which objections were made in the trial court, but to which no transcript or affidavit was submitted in support as required by the third sentence of Civ.R. 53(E)(3)(b), which states:
 {¶ 21} "* * * Any objection to a finding of fact shall be supported by a transcript of all the evidence submitted to the magistrate relevant to that fact or an affidavit of that evidence if a transcript is not available. * * *"
 {¶ 22} In Wade v. Wade (1996), 113 Ohio App.3d 414, 418,680 N.E.2d 1305, the court held that when "the failure to provide the relevant portions of the transcript or suitable alternative is clear on the face of the submissions, the trial court cannot then address the merits of that factual objection because the objecting party * * * has not provided all of the materials needed for review of that objection." See, also, State ex rel. Duncan v. Chippewa Township Trustees (1995),73 Ohio St.3d 728, 730, 654 N.E.2d 1254.
 {¶ 23} Therefore, the trial court may properly adopt a magistrate's factual findings without further consideration when the objecting party fails to provide the court with a transcript of the magistrate's hearing or other relevant material to support their objections. See Proctor v. Proctor (1988), 48 Ohio App.3d 55, 60,548 N.E.2d 287, citing Purpura v. Purpura (1986), 33 Ohio App.3d 237,515 N.E.2d 27. However, in the absence of such a transcript or affidavit, an appellate court will review the trial court's adoption of the magistrate's findings of fact to determine whether the trial court's adoption of that finding constituted an abuse of discretion. See id. See, also, Purpura v. Purpura, 33 Ohio App.3d at 239-240, 515 N.E.2d 27;Wade v. Wade, 113 Ohio App.3d at 419, 680 N.E.2d 1305; Kilroy v. B.H.Lakeshore Co. (1996), 111 Ohio App.3d 357, 360, 676 N.E.2d 171; State exrel. Duncan v. Chippewa Township Trustees, supra.
 {¶ 24} The term "abuse of discretion" has been defined by the Supreme Court of Ohio as "more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." State v. Adams (1980), 62 Ohio St.2d 151, 157-158,404 N.E.2d 144.
 {¶ 25} In evaluating the discretion of a lower court, a reviewing court must be circumspect. The fact that the reviewing court might reach a different conclusion than did the lower court does not establish an abuse of discretion. See Cox v. Fisher Fazio Foods, Inc. (1984),13 Ohio App.3d 336, 469 N.E.2d 1055. Rather, the reviewing court must demonstrate that the lower court's exercise of discretion was "not justified by, and clearly against, reason and the evidence; * * * such action must plainly appear to effect an injustice to the appellant."Sinclair v. Sinclair (1954), 98 Ohio App. 308, 129 N.E.2d 311. It is under this standard that we will determine whether the trial court abused its discretion in adopting the magistrate's findings of fact.
 2. Failure to File a Transcript With Objections {¶ 26} The fact that Marshall failed to provide the trial court with a transcript precludes this Court from considering the transcript he has submitted in this appeal. See State ex rel. Duncan v. ChippewaTownship Trustees, supra; Unger v. Reams (Aug. 6, 1993), 11th Dist. No. 92-L-116; see, also, Mothes v. Mothes (Aug. 2, 1991), Lake App. No. 90-L-15-094; Fretter v. Fretter (Nov. 15, 1991), Lake App. No. 91-L-057. This is because appellate courts will not take into consideration evidence not presented before the trial court. Unger, supra. See State exrel. Duncan v. Chippewa Township Trustees, 73 Ohio St.3d at 730,654 N.E.2d 1254, citing State v. Ishmail (1978), 54 Ohio St.2d 402,377 N.E.2d 500. If the transcript was unavailable at the time Marshall filed his objections, Civ.R. 53(E)(3)(b) provides that the objecting party may file an affidavit of the evidence instead. However, when filing his objections, Marshall failed to submit an affidavit in lieu of a transcript. Therefore, we will accept the trial court's adoption of the magistrate's factual findings as proper.
 {¶ 27} "When portions of the record necessary for the determination of an assigned error are absent, the reviewing court has nothing to pass on and has no choice but to presume the validity of the trial court's proceedings." Metzger v. Metzger (Aug. 21 1989), Crawford App. No. 3-87-39. Therefore, without the transcript of the hearing before the magistrate, or a sufficient affidavit setting forth the specific facts, we have no basis with which to review the record for an abuse of discretion. See Helton v. Helton (1994), 102 Ohio App.3d 733, 738,658 N.E.2d 1.
 {¶ 28} Applying these principals to Marshall's assignments of error in the case sub judice, we must overrule the assignments of error on the grounds that the record does not sustain the error asserted by Marshall. We cannot say that the trial court, after independently determining the applicable law and fact, was unreasonable or capricious when it adopted the decision of the magistrate.
 {¶ 29} We conclude that there was no abuse of discretion by the trial court. Therefore, we find Marshall's assignments of error to have no merit and overrule them.
 III. Conclusion {¶ 30} Therefore, because the trial court did not abuse its discretion, Marshall's assignments of error are overruled.
Judgment affirmed.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that appellees recover of appellant costs herein taxed.
This Court finds that there were reasonable grounds for this appeal.
It is further ordered that a special mandate issue out of this Court directing the LAWRENCE COUNTY COURT OF COMMON PLEAS to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as of the date of this Entry.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Harsha, J., and Kline, J.: Concur in Judgment Only.