THE STATE OF OHIO, APPELLANT, *v.* ADAMS, APPELLEE.

[Cite as State v. Adams (1980), 62 Ohio St. 2d 151.]

(No. 79-530—Decided May 7, 1980.)

152

*Mr. John T. Corrigan,* prosecuting attorney, and *Mr. Michael P. Kolesar,* for appellant.

*Fink & Greene Co., L.P.A., Mr. Michael C. Hennenberg,* and *Ms. Janet Burnside,* for appellee.

SWEENEY, J. The Court of Appeals found plain and reversible error in the trial court's failure to instruct the jury on the degree of mental culpability requisite to a finding of criminal liability under the endangering children statute (R. C. 2919.22).

R. C. 2919.22(B)(2),[1] as submitted to the jury for its con-

---

[1] R. C. 2919.22, in part, provides:

"(B) No person shall do any of the following to a child under eighteen or a mentally or physically handicapped child under twenty-one:

"* * *

"(2) Administer corporal punishment or other physical disciplinary measure, or physically restrain the child in a cruel manner or for a prolonged period, which punishment, discipline, or restraint is excessive under the circumstances and creates a substantial risk of serious physical harm to the child;"

sideration, does not "specify any degree of culpability" nor does it "plainly indicat[e] a purpose to impose strict criminal liability for the conduct described in such section." R. C. 2901.21(B). Recklessness therefore is sufficient culpability to commit the offense. The Court of Appeals correctly held that prior to finding a defendant guilty of violating R. C. 2919.22(B)(2), the state must prove recklessness on the part of the defendant as defined in R. C. 2901.22(C). The state has the burden of establishing all material elements of a crime by proof beyond a reasonable doubt. *Mullaney* v. *Wilbur* (1975), 421 U. S. 684.

As a general rule, a defendant is entitled to have the jury instructed on all elements that must be proved to establish the crime with which he is charged,[2] and, where specific intent or culpability is an essential element of the offense, a trial court's failure to instruct on that mental element constitutes error.[3]

In this cause, appellee neither requested an instruction on the element of recklessness nor did he object to the instruction as given. Thus, the Court of Appeals did not properly reverse Adams' conviction on the basis of the deficient instructions unless the trial court's error rose to the level of "plain error" and prejudiced the appellee.[4]

We held in *State* v. *Long* (1978), 53 Ohio St. 2d 91, paragraph three of the syllabus, that:

"Notice of plain error under Crim. R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice."

---

[2] See, *e.g., Miller* v. *State* (1932), 125 Ohio St. 415; *United States* v. *Rybicki* (C. A. 6, 1968), 403 F. 2d 599; *United States* v. *Bryant* (C. A. 6, 1972), 461 F. 2d 912; *United States* v. *Singleton* (C. A. 2, 1976), 532 F. 2d 199; *Thomas* v. *State* (Alaska 1974), 522 P. 2d 528; *State* v. *McKeough* (Me. 1973), 300 A. 2d 755; *Claybrooks* v. *State* (1971), 50 Wis. 2d 79, 183 N. W. 2d 139.

[3] See *Miller* v. *State, supra; State* v. *McKeough, supra; Thomas* v. *State, supra; State* v. *Griffin* (1978), 175 Conn. 155; 397 A. 2d 89; *United States* v. *Bryant, supra.*

[4] Crim. R. 30 provides, in part:

"A party may not assign as error the giving or failure to give any instructions unless he objects thereto before the jury retires to consider its verdict, stating specifically the matter to which he objects and the grounds of his objection***."

Crim. R. 52(B) provides:

"Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."

Consistent with *State* v. *Long,* we hold that a trial court's failure to separately and specifically charge the jury on every element of each crime with which a defendant is charged does not *per se* constitute plain error nor does it necessarily require reversal of a conviction.[5] Only by reviewing the record in each case can the probable impact of such a failure be determined, and a decision reached as to whether substantial prejudice may have been visited on the defendant, thereby resulting in a manifest miscarriage of justice.

In presenting its case against the appellee, the state called the senior pathologist of the county coroner's office who had performed an autopsy on the deceased child. He testified that the child, who weighed 19 pounds and was 33 inches tall at the time of his death, had suffered external injuries "which extended literally from his hairline down to his ankles" in the form of contusions (bruises) and abrasions (scrapes). Internally, the child had suffered hemorrhaging and bruising of the right lung, stomach, intestines and brain. In the pathologist's professional opinion, George O. Walker, Jr. "died as a result of multiple bruises or impacts to his head, trunk [and] extremities that led to associated internal injuries, shock and death." One particularly significant injury, a torn adrenal gland, was caused, in the pathologist's opinion, by "a violent impact to the trunk, either in the form of a powerful blow or a squeeze" greater than could have been suffered as the result of an ordinary fall onto a playground or onto cement. He testified that the child's injuries were sustained over a period of at least several days and that, although none of the individual injuries would necessarily have caused death, the cumulative effect of the injuries was more than the boy's body could tolerate.

The pathologist testified further that some of the child's abrasions could have been inflicted by fingernails or resulted

---

[5] In so holding we align ourselves with numerous state and federal jurisdictions. See, *e.g., Claybrooks* v. *State, supra; State* v. *Morgan* (1970), 3 Wash. App. 470, 475 P. 2d 923; *United States* v. *Singleton, supra; United States* v. *Rybicki, supra; United States* v. *Urbana* (C. A. 5, 1969), 412 F. 2d 1081, *certiorari denied* 400 U. S. 821.

Compare the following cases, holding that failure to charge on an essential element constitutes plain and reversible error *per se: Byrd* v. *United States* (C.A.D.C. 1965), 342 F. 2d 939; *Merrill* v. *United States* (C. A. 5, 1964), 338 F. 2d 763; *State* v. *Griffin, supra* (dictum).

from a fall. He testified that either an adult man or woman was capable of inflicting the injuries. The pathologist's descriptions of the child's injuries and his conclusions as to the cause of death were not controverted by the defense.

On the basis of this undisputed expert medical testimony and photographs of the child's body (which were admitted in evidence), the jury could only have come to the conclusion that the child was subjected to severe and repeated beatings by some person or persons. The defense presented no evidence which could support a theory that the injuries were caused by mere criminal negligence. On the contrary, the state's proof of the brutal nature of the boy's injuries support the conclusion that the person inflicting even some of the injuries would necessarily have known that his or her actions would risk causing serious physical harm to a 2 ½ year old child.[6] By relying on the sole defense that the appellee was not the person or one of the persons who abused the victim, the existence of recklessness on the part of the abuser was never put in issue at trial. "The evidence, as well as the law, governs the charge of the court in a criminal case***[R. C. 2945.11]." *State* v. *Loudermill* (1965), 2 Ohio St. 2d 79, 80. In finding the appellee guilty of involuntary manslaughter, the jury necessarily rejected the proffered defense and believed beyond a reasonable doubt that the appellee had been responsible for inflicting proven injuries to the child.

Thus, on this record and in the absence of a specific request for an instruction on the element of culpability, it cannot be said that a manifest injustice may have been worked on the appellee by the trial court's failure to instruct the jury on the essential element of recklessness. The Court of Appeals erred in holding that failure to be plain error and in reversing the conviction on that ground.

The Court of Appeals found separate reversible error in the trial court's calling of Renia Sartors as a court's witness.

---

[6] R. C. 2901.22(C) provides:

"A person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist."

**156**

The prosecutor presented his request that Renia Sartors be called as a court's witness out of the presence of the jury. He represented to the court that "there is a witness***Renia Sartors;" that in the past she had made "approximately three statements, and that there are items in those statements which are in conflict.[7] That there are matters about this case that she wishes to testify to, and that [it] would be in the interest of justice at arriving at the truth of what occurred***" that she testify. The prosecutor felt, however, that "because of the conflicting statements***[the State was] unable to vouch for her credibility."

The defense promptly objected to the prosecution's request that the court call Sartors as a court's witness on the basis that such a "highly irregular" procedure would "in essence give the jury the feeling that the court is taking sides in this issue." Sartors was called to the courtroom, still out of the presence of the jury. The court determined from the potential witness and her counsel that no "deal" with the prosecution had been struck for her testimony. The court assured itself that her testimony would be given freely and voluntarily, in full knowledge of her rights. Sartors was thereafter called as a witness before the jury by the court and asked a short series of questions (her name, knowledge of her son's death, and her discovery of it). The court then allowed both prosecution and defense the opportunity to cross-examine.

The Court of Appeals recognized that a trial court has the inherent power in its discretion to call an individual as a witness of the court. It held, however, that "because of the great potential for prejudice, absent special circumstances which should be placed in the record, the general rule must be that the court should not call a witness."[8]

[7] The prosecutor did not produce the allegedly inconsistent statements for the court's scrutiny at that time, nor does the record reflect whether the court had previously been presented with them.

[8] The Court of Appeals identified the following potential consequences of the practice which could result in prejudice to a criminal defendant: (1) the jury may award more deference and credibility to the court witness and consider him more important than other witnesses because he is called by the judge; and (2) the court's calling of a witness may amount to an abandonment of the impartiality due process demands of a judge. Although these risks of undue prejudice to the appellee might have been mitigated by an appropriate instruction to the jury, the defense requested no such instruction, nor was objection made to its omission.

We are not in total disagreement with the general rule formulated by the Court of Appeals. Unlike the Court of Appeals, however, we do not believe that the trial court's action in calling Sartors constituted an abuse of discretion nor that it constituted grounds for reversing Adams' conviction and remanding the cause for a new trial.

Under Ohio common law rules of evidence, the prosecution, had it called Sartors, would have been deemed to have "vouched" for her credibility and could not thereafter have impeached her.[9]

Appellee concedes that a trial court has the power to call witnesses in the exercise of a sound discretion.[10] However, when the court called Renia Sartors as a witness of the court appellee emphasizes that not only was he subjected to the risks of prejudice mentioned by the Court of Appeals, but the prosecution gained two significant procedural advantages: (1) it gained the right to impeach Sartors, and (2) it avoided the application during its examination of Sartors of the rule prohibiting it from asking leading questions of its own witness.

The term "abuse of discretion" connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. *Steiner* v. *Custer* (1940), 137 Ohio St. 448; *Conner* v. *Conner* (1959), 170 Ohio St.

---

[9] Proposed Evidence Rule 607, submitted to the General Assembly on January 14, 1980 (53 Ohio St. Bar Assn. 203, 212), provides, in contrast:

"The credibility of a witness may be attacked by any party except that the credibility of a witness may be attacked by the party calling the witness by means of a prior inconsistent statement only upon a showing of surprise and affirmative damage.***"

For analyses of the impact of the existence of the traditional "voucher" rule on the propriety of the practice of calling court's witnesses, see Note, Calling of Witnesses by Trial Court Enabling Prosecution to Meet Burden of Production Held Reversible Error, 89 Harv. L. Rev. 1906, 1911 *et. seq.;* Saltzburg, The Unnecessarily Expanding Role of the American Trial Judge, 64 Va. L. Rev. 1, 71.

[10] See *State* v. *Weind* (1977), 50 Ohio St. 2d 224, at 235-236:

"In jurisdictions that have considered the appropriateness of a trial court calling certain individuals as the court's own witness, the practice itself has been upheld. See 67 A.L.R. 2d 538. So long as the court maintains its impartiality and does not assume the role of an advocate, such practice does not prejudice the rights of the defendant to a fair and impartial trial."

See, also, 9 Wigmore on Evidence (3 Ed.), Section 2484; McCormick on Evidence (2 Ed.), Section 8.

158

85; *Chester Township* v. *Geauga Co. Budget Comm.* (1976), 48 Ohio St. 2d 372.

At the point in the trial when the trial court was faced with the prosecution's request that Sartors be called as a court's witness, the state had established a *prima facie* case against the appellee.[11] The state had produced evidence that the child had been badly abused; that the appellee had been present in the child's home during the time frame in which that abuse had been inflicted; that the proposed witness was the child's mother; and that both the appellee and the proposed witness had given statements to the police concerning the source of the child's injuries. The trial court had before it ample justification for concluding that Sartors' testimony would be beneficial to the jury in performing its fact-finding responsibilities.

"[I]n modern criminal trials, defendants [as well as prosecutors] are rarely able to select their witnesses: they must take them where they find them." *Chambers* v. *Mississippi* (1973), 410 U. S. 284, 296. The court, at the time it was faced with the prosecution's request, had in addition to the prosecutor's representation of prior conflicting statements, information that the appellee had lived as a partner in the potential witness' household (indicating a possible predisposition towards the appellee), but also that the witness was a co-defendant awaiting trial and willing to testify at her former household partner's trial for the same crime of which she was accused (suggesting a possible motivation to testify against the appellee).

We cannot conclude that the court abused its discretion in refusing to require the state to take its chances on Sartors' testimony and instead calling her as a witness of the court. Nor did the court act improperly in conducting direct examination from the bench. The court's examination was short, and it consisted of non-leading questions. It remained for trial counsel to elicit the bulk of her testimony through cross-examination.

Because we find no error in this record justifying reversal

---

[11] Cf. *United States* v. *Karnes* (C. A. 4, 1976), 531 F. 2d 214.

of the conviction, the judgment of the Court of Appeals must be reversed.

*Judgment reversed.*

CELEBREZZE, C. J., HERBERT, W. BROWN, P. BROWN, LOCHER and HOLMES, JJ., concur.