THE STATE OF OHIO, APPELLANT, *v.* WAMSLEY, APPELLEE.

[Cite as *State v. Wamsley,* 117 Ohio St.3d 388, 2008-Ohio-1195.]

(No. 2006–2135—Submitted November 27, 2007—Decided March 20, 2008.)

---

LUNDBERG STRATTON, J.

## I.   Introduction

{¶ 1} Today this court must determine whether a trial court's failure to instruct the jury on the culpable mental state of a charged offense is a "structural error" requiring automatic reversal or a "trial error" amenable to plain-error analysis when the defendant fails to object at trial.   Because we hold that the error was not structural and the court of appeals failed to properly conduct a plain-error analysis, we reverse the judgment of the court of appeals and remand the cause to that court for further proceedings.

## II.   Facts

{¶ 2} Timothy M. Wamsley, defendant-appellee, and Janet Stoddard, the victim in this case, had lived together for six and a half years when Stoddard decided to rent her own apartment because of problems in her relationship with Wamsley. On the afternoon of May 29, 2004, Stoddard called the police to have them remove Wamsley from her apartment.   Patrolman Patrick Wright responded to the call, but Stoddard told him that Wamsley had already left.

{¶ 3} Patrolman Wright was called to Stoddard's apartment a second time, a little after 10:00 p.m. that night.   When Wright arrived, he could hear a woman screaming for help.   As Wright started up the steps, Wamsley came out of Stoddard's apartment.

{¶ 4} After placing Wamsley in the custody of another officer, Wright went up to Stoddard's apartment.   As he reached the top of the stairs, Stoddard came "stumbling out, fell down, her face was covered in blood, she had blood on the side of her hair."   When Wright asked Stoddard what had happened, she was crying and said, "Tim broke in and kicked the hell out of me."

{¶ 5} Inside Stoddard's apartment, Wright found that the wooden doorjamb had been splintered and the lock broken.   The apartment was in disarray, and the television and dresser in Stoddard's bedroom had been knocked over. Photographs taken by Patrolman Wright revealed blood on the bedroom curtains, sheets, and pillows.

{¶ 6} Ronald James Scott Sr., Stoddard's landlord, who lived nearby, testified that he was leaving his house when he heard frantic screaming.   As Scott arrived at Stoddard's apartment, he saw Wamsley forcibly enter the apartment by hitting the door with his shoulder.   Scott testified that he believed he had heard Stoddard say that he (Wamsley) was trying to kill her.   Shortly thereafter, Scott saw Wamsley leave the apartment.   Scott later discovered that the doorjamb was cracked and splintered, indicating forced entry.

{¶ 7} Scott testified that he was familiar with Wamsley because Wamsley had been removed from Stoddard's apartment once or twice before.   Further, Wams-

ley was not permitted to be in the apartment, and he was not a party to the verbal lease agreement.

{¶ 8} Martin K. Thorn III, an EMT who was called to the scene, testified that when he asked Stoddard what had happened to her, she said that she had been attacked by her ex-boyfriend. Thorn indicated on his report that night that Stoddard had told him her ex-boyfriend broke into her house and attacked her by kicking her in the head and choking her.

{¶ 9} Wamsley was indicted on June 24, 2004, on one count of aggravated burglary, a first-degree felony, as set forth in R.C. 2911.11(A)(1). At trial, the prosecutor called Stoddard to testify as an adverse witness, and in her testimony at trial, she recanted a number of her previous statements.

{¶ 10} Stoddard testified that she had moved into her own apartment because she and Wamsley were having problems. Stoddard testified that on May 29, 2004, she had called police earlier that day to have Wamsley removed from her apartment. She stated that she was awakened later that evening by two loud thumps. She then heard someone coming into the apartment. She went to the window and yelled for help. She turned and saw a figure in the dark and kicked him in the chest. Stoddard stated that she could not see the person's face. She testified that the person grabbed her by the shirt and hair and that she tried to kick him again, but ended up kicking her dresser instead, lost her balance and fell, hitting her head on the nightstand. She testified that Wamsley did not kick her.

{¶ 11} Stoddard testified that Wamsley never had a key to her apartment, but that he knew where an outside key was hidden. She testified that Wamsley had slept at her apartment four or five nights prior to the night of the crime. Stoddard stated that she had removed the hidden key on May 29, 2004, because she was angry with Wamsley and did not want him in the apartment. She testified that he had never lived with her at the apartment. She also testified that she still loved Wamsley.

{¶ 12} Testimony by Stoddard's ex-husband, Richard Stoddard, revealed that about an hour before Wamsley attacked Stoddard in her apartment, he and Wamsley had engaged in a fistfight outside of a local bar, and Richard had knocked Wamsley unconscious. Despite her recantations at trial, Stoddard testified that after Wamsley broke into her apartment, he told her, "See what Richard did to me? Now, you're gonna get yours."

{¶ 13} A jury convicted Wamsley of aggravated burglary. On appeal, the Court of Appeals for Columbiana County vacated Wamsley's conviction and sentence and remanded the cause. This court stayed the decision of the court of appeals, and the cause is now before this court pursuant to the acceptance of a discretionary appeal.

### III. Analysis

{¶ 14} Trespass is an element of aggravated burglary, under R.C. 2911.11. The trial court instructed the jury concerning trespass as follows: "To trespass means that a person enters onto the land or the premises of another without privilege to do so." The trial court failed to inform the jury that to be guilty of trespass, the defendant must act either knowingly, recklessly, or negligently. R.C. 2911.21(A)(2), (3), and (4). Accordingly, the trial court committed error. The defendant did not object. The question at issue is whether the reviewing court should treat the error as a so-called structural error or as a possible plain error.

{¶ 15} In *State v. Fisher*, 99 Ohio St.3d 127, 2003-Ohio-2761, 789 N.E.2d 222, this court recognized that "[i]n *Arizona v. Fulminante* (1991), 499 U.S. 279, 306–312, 111 S.Ct. 1246, 113 L.Ed.2d 302, the United States Supreme Court denominated the two types of constitutional errors that may occur in the course of a criminal proceeding—'trial errors,' which are reviewable for harmless error, and 'structural errors,' which are per se cause for reversal. * * * 'Trial error' is 'error which occurred during the presentation of the case to the jury, and which may therefore be quantitatively assessed in the context of other evidence presented in order to determine whether its admission was harmless beyond a reasonable doubt.' * * * 'Structural errors,' on the other hand, 'defy analysis by "harmless error" standards' because they 'affect[ ] the framework within which the trial proceeds, rather than simply [being] an error in the trial process itself.' [*Fulminante* ] at 309 and 310, 111 S.Ct. 1246, 113 L.Ed.2d 302. Consequently, a structural error *mandates* a finding of 'per se prejudice.'" (Emphasis sic.) *Fisher* at ¶ 9.

{¶ 16} We have previously held that " 'if the defendant had counsel and was tried by an impartial adjudicator, there is a strong presumption that any other constitutiona[l] errors that may have occurred are subject to harmless-error analysis.' " *State v. Hill* (2001), 92 Ohio St.3d 191, 197, 749 N.E.2d 274, quoting *Rose v. Clark* (1986), 478 U.S. 570, 579, 106 S.Ct. 3101, 92 L.Ed.2d 460. Moreover, as we stated in *State v. Perry*, 101 Ohio St.3d 118, 2004-Ohio-297, 802 N.E.2d 643, "[c]onsistent with the presumption that errors are not 'structural,' the United States Supreme Court 'ha[s] found an error to be "structural," and thus subject to automatic reversal, only in a "very limited class of cases." *Johnson v. United States*, 520 U.S. 461, 468, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997) (citing *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) (complete denial of counsel)); *Tumey v. Ohio*, 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927) (biased trial judge); *Vasquez v. Hillery*, 474 U.S. 254, 106 S.Ct. 617, 88 L.Ed.2d 598 (1986) (racial discrimination in selection of grand jury); *McKaskle v. Wiggins*, 465 U.S. 168, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984) (denial

of self-representation at trial); *Waller v. Georgia,* 467 U.S. 39, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984) (denial of public trial); *Sullivan v. Louisiana,* 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993) (defective reasonable-doubt instruction).'" *Perry,* 101 Ohio St.3d 118, 2004-Ohio-297, 802 N.E.2d 643, ¶ 18, quoting *Neder v. United States* (1999), 527 U.S. 1, 8, 119 S.Ct. 1827, 144 L.Ed.2d 35.

{¶ 17} Here the trial court failed to instruct not only on the culpable mental state of the underlying offense of trespass, but also on all the elements required to establish the underlying offense of assault. "As a general rule, a defendant is entitled to have the jury instructed on all elements that must be proved to establish the crime with which he is charged, and, where specific intent or culpability is an essential element of the offense, a trial court's failure to instruct on that mental element constitutes error." (Footnote omitted.) *State v. Adams* (1980), 62 Ohio St.2d 151, 153, 16 O.O.3d 169, 404 N.E.2d 144. However, in *Adams,* we held that the failure to instruct on each element of an offense is not necessarily reversible as plain error. Id. at paragraph two of the syllabus. Rather, an appellate court must review the instructions as a whole and the entire record to determine whether a manifest miscarriage of justice has occurred as a result of the error in the instructions. Id. at paragraph three of the syllabus.

{¶ 18} Furthermore, this court has rejected the concept that structural error exists in every situation in which even serious error occurred. See *State v. Hill,* 92 Ohio St.3d at 199, 749 N.E.2d 274, quoting *Johnson v. United States,* 520 U.S. at 466, 117 S.Ct. 1544, 137 L.Ed.2d 718. In *Johnson,* a criminal defendant argued that an unobjected-to error was structural, and therefore outside the plain-error strictures of Fed.R.Crim.P. 52(b), Ohio's Crim.R. 52(B) counterpart. "The *Johnson* court * * * found that it had no authority to create a 'structural error exception' to the rule, and seemed to hold that, in direct appeals from federal convictions, a structural error analysis is inappropriate in a plain-error situation." *Hill* at 199, 749 N.E.2d 274, quoting *Johnson,* 520 U.S. at 466, 117 S.Ct. 1544, 137 L.Ed.2d 718.

{¶ 19} In Ohio, Crim.R. 52 gives appellate courts narrow power to correct errors that occurred during the trial court proceedings. Crim.R. 52 provides:

{¶ 20} "(A) Harmless error

{¶ 21} "Any error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded.

{¶ 22} "(B) Plain error

{¶ 23} "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."

{¶ 24} After reviewing the record, we conclude that the instructions in this case did not necessarily render the trial so fundamentally unfair that it could not be a

reliable vehicle for the determination of the defendant's guilt or innocence. See *Rose v. Clark*, 478 U.S. at 577–578, 106 S.Ct. 3101, 92 L.Ed.2d 460. Thus, this case does not present a violation of a fundamental constitutional right that would lead to the kind of basic unfairness amounting to structural error, as was present in the cases cited above. Therefore, we hold that this error did not rise to the level of structural error.

{¶ 25} Because defense counsel did not object to the trial court's failure with regard to jury instructions at trial, this case calls for a plain-error analysis under Crim.R. 52(B). However, the court of appeals seems to have applied a blend of structural-error and plain-error analysis. For example, the court began by setting forth the defendant's argument that the trial court's failure to instruct the jury as to certain elements of the crime of aggravated burglary constituted "structural and reversible" error. 2006-Ohio-5303, ¶ 14. Later, the court drifted into an analysis of whether the error was "harmful, prejudicial, and constituted plain error." Id. at ¶ 26. Still further on in the decision, however, the opinion drifted back into structural error, in the court's discussion of the Eleventh District's decision in *State v. Smith* (Jan. 20, 1989), 11th Dist. No. 1720, 1989 WL 4275. 2006-Ohio-5303, ¶ 46.

{¶ 26} The court went on to state, "Just as occurred in the instant case, the defendant's counsel in the *Smith* case failed to object to the erroneous jury instruction. In *Smith*, the Eleventh District Court of Appeals held that a failure to instruct the jury on an essential element of the crime is such a fundamental constitutional error that prejudice must be presumed and the judgment must be reversed as plain error. Id. at *9. The *Smith* opinion seems to be describing what is now referred to as a 'structural error,' referring to a rare type of constitutional error 'affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself.'" *Wamsley*, 2006-Ohio-5303, 2006 WL 2876092, ¶ 46, quoting *Arizona v. Fulminante*, 499 U.S. at 310, 111 S.Ct. 1246, 113 L.Ed.2d 302.

{¶ 27} Confusing structural error and plain error, two completely separate and distinct standards, the appellate court discussed plain error while using terminology relevant only to structural error, and concluded that it had no choice but to reverse. In so doing, the appellate court failed to complete the full plain-error analysis, which would have included an inquiry into whether the defendant proved that the error affected substantial rights. See *United States v. Olano* (1993), 507 U.S. 725, 732, 113 S.Ct. 1770, 123 L.Ed.2d 508. Further, we note that even if the defendant satisfies this burden, the appellate court has discretion to disregard the error and should correct it "only to prevent a manifest miscarriage of justice." *State v. Long* (1978), 53 Ohio St.2d 91, 7 O.O.3d 178, 372 N.E.2d 804, paragraph three of the syllabus.

#### IV. Conclusion

{¶ 28} As we held in *Perry*, "both this court and the United States Supreme Court have cautioned against applying a structural-error analysis where, as here, the case would be otherwise governed by Crim.R. 52(B) because the defendant did not raise the error in the trial court. * * * This caution is born of sound policy. For to hold that an error is structural even when the defendant does not bring the error to the attention of the trial court would be to *encourage* defendants to remain silent at trial only later to raise the error on appeal where the conviction would be automatically reversed. We believe that our holdings should foster rather than thwart judicial economy by providing incentives (and not disincentives) for the defendant to raise all errors in the trial court—where, in many cases, such errors can be easily corrected." (Emphasis sic.) *Perry*, 101 Ohio St.3d 118, 2004-Ohio-297, 802 N.E.2d 643, ¶ 23.

{¶ 29} Accordingly, because the court of appeals did not correctly conduct the proper plain-error analysis, we reverse the judgment of the court of appeals and remand the cause to that court to apply a plain-error analysis and to consider the remaining assignments of error that the court previously rendered moot.

Judgment reversed
and cause remanded.

O'CONNOR, O'DONNELL, LANZINGER, and CUPP, JJ., concur.

MOYER, C.J., concurs in judgment only.

PFEIFER, J., concurs in part and dissents in part.

---

**PFEIFER, J., concurring in part and dissenting in part.**

{¶ 30} I concur in the majority opinion's conclusion that this is a plain-error case. I dissent because I believe that the court of appeals conducted a proper plain-error analysis under Crim.R. 52(B).

{¶ 31} The bulk of the court of appeals' error analysis is squarely directed at plain error. The court of appeals mentions both types of error near the beginning of its analysis, structural error implicitly and plain error explicitly. 2006-Ohio-5303, ¶ 26. The court goes on to discuss jury instructions for four paragraphs, without referring to structural error. Id. at ¶ 28–31. Structural error is not touched upon again until ¶ 45, in which the court refers to "automatic reversible error." In ¶ 32, the court states that "a failure to object to a trial error waives all but plain error." In ¶ 33, that court states, "Appellant contends that the error is of such magnitude that the plain error rule should be invoked." In ¶ 34–39, the court discusses *State v. Adams* (1980), 62 Ohio St.2d 151, 16 O.O.3d 169, 404 N.E.2d 144, and the concept that not all failures to properly

instruct the jury on the elements of an offense require reversal under the plain-error rule. In ¶ 41–46, the court discusses *State v. Smith* (Jan. 20, 1989), 11th Dist. No. 1720, 1989 WL 4275, the "[o]nly * * * appellate case [that] specifically discusses * * * whether it is plain error for the trial court to fail to instruct the jury on the culpable mental state for criminal trespass as an element of aggravated burglary." 2006-Ohio-5303, at ¶ 41.

{¶ 32} In ¶ 47–52, the court discusses *Hoover v. Garfield Hts. Mun. Court* (C.A.6, 1986), 802 F.2d 168, a federal case that concluded that "the failure to instruct the jury on an essential element of [a] crime" is not harmless error. Id. at 178. These paragraphs undeniably discuss structural error but conclude by stating that federal cases do not bind state courts on this issue. 2006-Ohio-5303, at ¶ 52. At ¶ 53, the court states that "[m]any of Ohio's appellate districts agree that a failure to instruct the jury as to one of the essential elements of the crime requires reversal, whether as plain error or as automatically reversible structural error." In ¶ 54, the court quotes with approval from *State v. Stacy,* 12th Dist. No. CA2002–03–073, 2003-Ohio-3695, which stated, "We find that the trial court's failure to instruct the jury on every essential element of the offense * * * was plain error under Crim.R. 52(B)." In ¶ 55, the court concludes that "failure to instruct the jury on all the elements of [a] crime is a type of fundamental error that satisfies the requirements of the plain error rule." The court continues by deciding that "under the facts of this case, the failure of the trial court to instruct the jury on the culpable mental state for criminal trespass as part of the definition of the crime of aggravated burglary warrants reversal." Id.

{¶ 33} I agree with the majority opinion that the court mentioned structural error at the beginning of its analysis, primarily because the issue had been raised by the appellant. I also agree with the majority opinion that the court of appeals discussed a federal case that applied a structural-error analysis, though without relying on it. But I do not agree with the majority opinion that the court of appeals confused structural error and plain error. Majority opinion at ¶ 27. After reviewing the entirety of the court of appeals' analysis, I conclude that the court of appeals conducted a plain-error analysis. I would affirm the decision of the court of appeals.

---

Robert L. Herron, Columbiana County Prosecuting Attorney, and Tammie M. Jones, Assistant Prosecuting Attorney, for appellant.

David H. Bodiker, Ohio Public Defender, and Katherine A. Szudy, Assistant Public Defender, for appellee.