OPINION
{¶ 1} Defendant, Michael Chambliss, appeals from a judgment of the common pleas court revoking his community control and imposing an eight month prison term.
 {¶ 2} In 2005, after stealing his girlfriend's cell phone and change purse from her dormitory room at Central State *Page 2 
University, Defendant was indicted on one count of burglary, one count of receiving stolen property, and one count of theft. Defendant entered pleas of guilty pursuant to a plea agreement to an amended charge of attempted burglary, R.C. 2923.02(A), 2911.12(A)(3), and theft, R.C. 2913.02(A)(1). The State dismissed the receiving stolen property charge and recommended community control with restitution.
 {¶ 3} The trial court sentenced Defendant to five years of community control, with conditions including the payment of a fine, court costs, and restitution. The court also imposed a reporting requirement during the five year term. The underlying sentence specified in the event Defendant violated his community control would be thirty months incarceration.
 {¶ 4} On January 17, 2007, Defendant's probation officer, Matt Johnson, filed a motion to revoke Defendant's community control, alleging that Defendant had failed to report since November 20, 2006, and had also failed to make any payments on his fine and costs since September 11, 2006. A capias was issued for Defendant's arrest. After Defendant learned of the outstanding warrant, he voluntarily turned himself in and waived the probable cause hearing.
 {¶ 5} A final hearing on the community control violations was held on February 27, 2008. Defendant testified that he *Page 3 
had received a letter from the court's probation department terminating his community control, and therefore he did not report thereafter. Defendant admitted that he failed to make any of the required payments.
 {¶ 6} The trial court concluded that there was substantial evidence that Defendant violated his community control by failing to report and by failing to make payments. The court revoked Defendant's community control and imposed reduced concurrent eight month prison terms on the attempted burglary and theft offenses.
 {¶ 7} Defendant appealed to this court from the revocation of his community control and the trial court's imposition of its sentence.
FIRST ASSIGNMENT OF ERROR
 {¶ 8} "THE TRIAL COURT ABUSED ITS DISCRETION IN REVOKING APPELLANT'S COMMUNITY CONTROL SUPERVISION WHEN TESTIMONY INDICATED THAT HE HAD MADE A GOOD FAITH EFFORT TO COMPLY WITH ITS TERMS AND CONDITIONS."
 {¶ 9} Community control is a form of probation. The privilege of probation rests upon the probationer's compliance with the probation conditions and any violation of those conditions may properly be used to revoke the privilege. State v. Bell (1990), 66 Ohio App.3d 52. Substantial evidence *Page 4 
must support the revocation of probation, State v. Mingua (1974), 42 Ohio App.2d 35, and a court's decision to revoke probation will not be disturbed on appeal absent an abuse of discretion. State v.Christian, Champaign App. No. 2000-CA-23, 2001-Ohio-1522. An abuse of discretion means more than a mere error of law or judgment. It implies an arbitrary, unreasonable, unconscionable attitude on the part of the court. State v. Adams (1980), 62 Ohio St.2d 151.
 {¶ 10} The record shows that the last time Defendant reported to the probation department in person was on November 20, 2006. However, instead of waiting to meet with his probation officer, Defendant left a note saying he was in a hurry to get to a job interview and would be back later that day. Defendant never returned. Defendant testified that he subsequently received a letter from the probation department terminating his community control and advising him that he no longer needed to report.
 {¶ 11} Probation officer John Cain testified that he took over supervision of Defendant from Matt Johnson and was Defendant's probation officer from the summer of 2006 to the winter of 2006. Cain did not recall sending Defendant a letter saying his community control was terminated and that he did not need to report again. Cain testified that termination *Page 5 
from community control is done by court order, not a letter from the probation department.
 {¶ 12} Probation officer Matt Johnson testified that Defendant failed to report since November 20, 2006, and has not made any payments toward his fine and court costs since September 11, 2006. The current balance due is $930.40. When Johnson reacquired supervision of Defendant from John Cain in January 2007, he discovered that Defendant had failed to report or make his payments.
 {¶ 13} After Defendant was arrested in January 2008, he was interviewed by Johnson. Defendant told Johnson that sometime after November 20, 2006, during that same week, he received a letter from the probation department stating that his community control was terminated and that he no longer needed to report. Johnson found no evidence of such letter in Defendant's probation department file. Johnson testified that community control is terminated by court order, not a letter from the probation department, and there is no such order in the court file in Defendant's case, Case No. 2005-CR-208.
 {¶ 14} Defendant testified at the revocation hearing about the letter he allegedly received. Defendant did not remember the date of that letter, and testified that he could not *Page 6 
produce the letter because it had been kept at his future mother-in-law's residence and was probably lost when she moved. Defendant denied absconding or failing to report, but did admit to not making his payments. According to Defendant, after his "child support kicked in," things were kind of tight for Defendant and it just "slipped his mind."
 {¶ 15} The trial court concluded that Defendant's claim that he received a letter from the probation department terminating his community control lacks credibility because community control is terminated only by court order, not a letter from the probation department. The court found that there is substantial evidence that Defendant violated his community control by failing to report and failing to make his payments, and the court revoked Defendant's community control and imposed an eight month sentence.
 {¶ 16} Contrary to Defendant's contentions, the testimony of the two probation officers does not imply that Defendant may have received a letter terminating his community control or that such a letter was ever prepared. Those were merely suggestions made by Defendant's counsel that the probation officers could not deny on their sworn recollections, but there is no dispute that a letter could not have been sent absent the court's order and that the court never issued such *Page 7 
an order. There is substantial evidence in this record that Defendant violated his community control by failing to report to his probation officer, and we find no abuse of discretion on the part of the trial court in revoking Defendant's community control.
 {¶ 17} Defendant's first assignment of error is overruled.
SECOND ASSIGNMENT OF ERROR
 {¶ 18} "APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL WHEN HIS TRIAL COUNSEL FAILED TO REQUEST A CONTINUANCE TO SECURE THE APPEARANCE OF AN ESSENTIAL WITNESS."
 {¶ 19} Counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance. Strickland v. Washington (1984),466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. To show that a defendant has been prejudiced by counsel's deficient performance, the defendant must demonstrate that were it not for counsel's errors, the result of the trial probably would have been different. Id.; State v. Bradley (1989),42 Ohio St.3d 136.
 {¶ 20} Defendant argues that his counsel performed in a deficient manner by failing to request a continuance of the *Page 8 
revocation hearing to secure the attendance of a crucial witness, Defendant's girlfriend, who allegedly was present when Defendant opened the letter from the probation department terminating his community control that Defendant claims he received.
 {¶ 21} Defendant concedes in his brief that he made no proffer of what testimony Defendant's girlfriend might offer were she called as a witness. Furthermore, this record does not disclose why Defendant's girlfriend did not appear in court to testify, or why defense counsel did not subpoena her.
 {¶ 22} Ordinarily, counsel's failure to subpoena witnesses is a matter of trial tactics, and absent a showing of prejudice, does not amount to ineffective assistance of counsel. State v. Hunt (1984),20 Ohio App.3d 310. That is particularly true where, as here, there is no showing that the testimony of the missing witness would have assisted the defense.State v. Reese (1982), 8 Ohio App.3d 202. Therefore, on this record we cannot find that Defendant was prejudiced by counsel's alleged failure on the standard Strickland and Bradley impose.
 {¶ 23} Defendant's second assignment of error is overruled. The judgment of the trial court will be affirmed. *Page 9 
DONOVAN, P.J. And FROELICH, J., concur. *Page 1