OPINION
{¶ 1} Appellant Timothy M. Wamsley appeals his conviction and sentence on one count of aggravated burglary in the Columbiana County Court of Common Pleas. We vacated the conviction and sentence on direct appeal. That decision was reversed on further appeal to the Ohio Supreme Court.State v. Wamsley, 117 Ohio St.3d 388, 2008-Ohio-1195, 884 N.E.2d 45. The case has been remanded to us so that we may review the case under a plain error analysis, and review any remaining errors that were treated as moot by our prior decision. We hold that plain error did not occur in this case. We further hold that there are no other reversible errors in this case. Appellant's conviction and sentence are affirmed.
 History of the Case {¶ 2} Appellant and Janet Stoddard, the victim in this case, had lived together for six and a half years when Stoddard decided to rent her own apartment because of problems in her relationship with Appellant. On the afternoon of May 29, 2004, Stoddard called the police to have them remove Appellant from her apartment. East Liverpool Patrolman Patrick Wright responded to the call, but Stoddard told him that Appellant had already left.
 {¶ 3} Patrolman Wright was called to Stoddard's apartment a second time at 10:00 p.m. that night. When Wright arrived, he saw two people standing near the entrance to Stoddard's apartment and he heard a woman screaming for help. As Wright started up the steps, Appellant came out of Stoddard's apartment. Wright testified that Stoddard then came, "stumbling out, fell down, her face was covered in *Page 3 
blood, she had blood on the side of her hair." (Tr., p. 47.) When Wright asked Stoddard what had happened, she was crying and said, "Tim broke in and kicked the hell out of me." (Tr., p. 48.) Appellant was immediately taken into custody. Wright called for an ambulance and accompanied Stoddard back to her apartment to wait.
 {¶ 4} Martin K. Thorn III, an EMT who was called to the scene, testified that when he asked Stoddard what had happened to her, she said that she had been attacked by her ex-boyfriend. Thorn found that Stoddard had been struck on her upper back, and a flap of skin was loose and bleeding from the back of her head. It appeared to Thorn that Stoddard had been kicked in the head and choked. At some point while Thorn was treating Stoddard, she lost consciousness and was taken to the hospital.
 {¶ 5} Inside Stoddard's apartment, Wright found that the wooden doorjamb had been splintered and the lock broken. Mr. Ronald Scott, who was the landlord of the apartment, testified that he saw Appellant forcefully enter the apartment by hitting the door with his shoulder. The apartment was in disarray, and the television and dresser in Stoddard's bedroom had been knocked over. Photographs taken by Patrolman Wright revealed blood on the bedroom curtains, sheets, and pillows.
 {¶ 6} At trial, Scott testified he was aware that Appellant had been removed from Stoddard's apartment once or twice before. He also testified that Appellant was not permitted to be in the apartment and he was not a party to the verbal lease agreement. He stated that he had previously told Stoddard that she would have to leave the apartment if Appellant continued to visit her there. *Page 4 
 {¶ 7} Appellant was indicted on June 24, 2004, on one count of aggravated burglary, a first-degree felony, as set forth in R.C. 2911.11(A)(1). At trial, the prosecutor called Stoddard to testify as an adverse witness. In her testimony at trial, she recanted a number of her previous statements about what had occurred at the time of the crime. She testified that she and Appellant had been in an "on and off" romantic relationship for about six years. She testified that she had moved into her own apartment because she and Appellant were having problems. She testified that early in the day of May 29, 2004, she called the police to have Appellant removed from her apartment. She stated that she was awakened later that evening by two loud thumps. She then heard someone entering the apartment. She went to the window and called for help. She turned and saw a figure in the dark and kicked him in the chest. Stoddard stated that she could not see the person's face. She testified that the person grabbed her by the shirt and hair and that she tried to kick him again, but ended up kicking her dresser instead. She lost her balance and fell, hitting her head on the nightstand. She testified that Appellant did not kick her.
 {¶ 8} Stoddard further testified that Appellant did not have a key to her apartment, but that he knew where an outside key was hidden. She testified that Appellant spent the night at her apartment four or five nights prior to the night of the crime. She testified that she had removed the hidden key on May 29, 2004, because she was angry with Appellant and did not want him in the apartment.
 {¶ 9} Testimony by Stoddard's ex-husband, Richard Stoddard, revealed that about an hour before Appellant attacked Stoddard in her apartment, he and Appellant *Page 5 
had engaged in a fistfight outside of a local bar, where Richard knocked Appellant unconscious. Despite her recantations at trial, Stoddard testified that after Appellant broke into her apartment, he told her, "See what Richard did to me? Now, you're gonna get yours." (Tr., p. 102.)
 {¶ 10} A jury convicted Appellant of aggravated burglary. He appealed to this Court, and we vacated the conviction and sentence and remanded the cause. The state filed a discretionary appeal with the Ohio Supreme Court, and the case was accepted for review. The Supreme Court held that the trial court's failure to instruct the jury on the culpable mental state for criminal trespass as an element of aggravated burglary did not rise to the level of a structural constitutional error.Wamsley, supra, 117 Ohio St.3d 388, ¶ 24. The Supreme Court determined that further analysis under a plain error standard of review needed to be completed. The Supreme Court also directed us to conduct further review on the remaining assignments of error that we had previously treated as moot.
 {¶ 11} Appellant's third assignment of error, which was the determinative assignment of error in our original opinion, is as follows:
 {¶ 12} "THE TRIAL COURT ERRED WHEN IT OMITTED FROM THE JURY INSTRUCTIONS THE CULPABLE MENTAL STATE NEEDED FOR THE TRESPASS ELEMENT OF AGGRAVATED BURGLARY, THE DEFINITION OF AN OCCUPIED STRUCTURE, THE DEFINITION OF CAUSE OR ATTEMPT TO CAUSE PHYSICAL HARM, AS WELL AS THE DEFINITIONS OF THE ELEMENTS REQUIRED TO ESTABLISH THE UNDERLYING CRIMINAL OFFENSE OF *Page 6 
ASSAULT THEREBY DENYING DEFENDANT/APPELLANT HIS RIGHTS TO DUE PROCESS."
 {¶ 13} This assignment of error has four parts, all dealing with omissions from the jury instructions regarding elements of the crime of aggravated burglary, which is defined in R.C. 2911.11(A)(1) as:
 {¶ 14} "(A) No person, by force, stealth, or deception, shall trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, when another person other than an accomplice of the offender is present, with purpose to commit in the structure or in the separately secured or separately occupied portion of the structure any criminal offense, if any of the following apply:
 {¶ 15} "(1) The offender inflicts, or attempts or threatens to inflict physical harm on another[.]"
 {¶ 16} We previously determined that there was no merit to Appellant's arguments regarding the definition of an occupied structure and the definition of causing or attempting to cause physical harm. State v.Wamsley, 7th Dist. No. 05 CO 11, 2006-Ohio-5303, ¶ 56-63. There is no need to revisit our decision as to these issues. Appellant's remaining arguments are that the trial court did not explain to the jury all the elements of the underlying crime of trespass or the underlying crime of assault. Appellant is correct that trespass is an element of aggravated burglary, under R.C. 2911.11. The trial court instructed the jury concerning trespass as follows: "To trespass means that a person enters onto the land or the premises of *Page 7 
another without privilege to do so." (Tr., p. 154.) The trial court failed to inform the jury that to be guilty of trespass, the defendant must act either knowingly, recklessly, or negligently. R.C. 2911.21
(A)(2), (3), and (4).
 {¶ 17} The commentary to the Ohio Jury Instructions states that the trial court is required to instruct the jury on the elements of trespass as part of the instructions for aggravated burglary:
 {¶ 18} "Trespass is an element of the offense of aggravated burglary. A trespass can be committed with a knowing, reckless or negligent culpable mental state. See R.C. 2911.21. The court must instruct on the elements of trespass including the appropriate culpable mental state as indicated by the facts of the case." 4 Ohio Jury Instructions (2005) 386, Section 511.11.
 {¶ 19} Appellant is also correct that aggravated burglary requires proof that the defendant had the criminal state of mind to commit some type of criminal offense while trespassing in an occupied structure. R.C. 2911.11. Appellant assumes that the underlying crime alleged here was assault, which is defined in R.C. 2903.13:
 {¶ 20} "(A) No person shall knowingly cause or attempt to cause physical harm to another or to another's unborn.
 {¶ 21} "(B) No person shall recklessly cause serious physical harm to another or to another's unborn."
 {¶ 22} The record indicates that the jury was given no instruction regarding any underlying criminal offense, such as assault, in order for the jury to determine whether Appellant had the requisite criminal state of mind to commit the underlying *Page 8 
offense. Once again, the Ohio Jury Instructions indicate that such an instruction be given to the jury:
 {¶ 23} "The court must instruct the jury on the elements of the underlying criminal offense together with the meaning of pertinent words and phrases." 4 Ohio Jury Instructions (2005) 386, Section 511.11.
 {¶ 24} The Ohio Supreme Court has recently held that, "it is preferable for the trial judge to instruct the jury in all aggravated-burglary cases as to which criminal offense the defendant is alleged to have intended to commit once inside the premises and the elements of that offense." State v. Gardner, 118 Ohio St.3d 420,2008-Ohio-2787, 889 N.E.2d 995, ¶ 73.
 {¶ 25} "As a general rule, a defendant is entitled to have the jury instructed on all elements that must be proved to establish the crime with which he is charged, and, where specific intent or culpability is an essential element of the offense, a trial court's failure to instruct on that mental element constitutes error." (Footnote omitted.) State v.Adams (1980), 62 Ohio St.2d 151, 153, 16 O.O.3d 169, 404 N.E.2d 144.
 {¶ 26} There is no question that the trial court committed error in its instruction to the jury regarding the elements of criminal trespass and assault. Wamsley at ¶ 14. However, Appellant's counsel did not object to the jury instructions at trial. Crim. R. 30 provides, in pertinent part: "[o]n appeal, a party may not assign as error the giving or the failure to give any instructions unless the party objects before the jury retires to consider its verdict, stating specifically the matter objected to and the grounds of the *Page 9 
objection." Thus, the trial court's error is subject only to a plain error analysis. Id. at ¶ 25.
 {¶ 27} Under Crim. R. 52(B), "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." "Notice of plain error under Crim. R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." State v. Long
(1978), 53 Ohio St.2d 91, 372 N.E.2d 804, 805, paragraph three of the syllabus.
 {¶ 28} There are three conditions that must be met to satisfy the plain error rule. First, there must be a deviation from a legal rule. Second, the error must be plain, meaning that the error is an obvious defect in the trial proceedings. Third, the error must have affected the defendant's substantial rights. This has been interpreted to mean that the trial court's error must have affected the outcome of the trial.State v. Barnes (2002), 94 Ohio St.3d 21, 27, 759 N.E.2d 1240.
 {¶ 29} As pointed out in Wamsley, supra, 117 Ohio St.3d at ¶ 27, a reviewing court has the discretion in whether to take notice of and correct plain error. See also,. Long, supra, paragraph three of the syllabus; State v. Noling, 98 Ohio St.3d 44, 2002-Ohio-7044,781 N.E.2d 88, at ¶ 62. Plain error should be noticed and corrected, "if the error `seriously affect[s] the fairness, integrity or public reputation of judicial proceedings'[.]" Barnes, supra, 94 Ohio St.3d at 27, quotingUnited States v. Atkinson (1936), 297 U.S. 157, 160, 56 S.Ct. 391, 80 L.Ed. 555. *Page 10 
 {¶ 30} In order to prevail under a plain error analysis, the appellant bears the burden of demonstrating that the outcome of the trial clearly would have been different but for the error. State v. Payne,114 Ohio St.3d 502, 2007-Ohio-4642, 873 N.E.2d 306, ¶ 17.
 {¶ 31} The Ohio Supreme Court has held that the failure to instruct on each element of an offense is not necessarily reversible as plain error.Adams, supra, 62 Ohio St.2d 151, 16 O.O.3d 169, 404 N.E.2d 144, at paragraph two of the syllabus; Wamsley, supra, 117 Ohio St.3d 388,2008-Ohio-1195, 884 N.E.2d 45, ¶ 17. An appellate court must review the instructions as a whole to determine whether a manifest miscarriage of justice has occurred as a result of the error in the instructions. Id. at paragraph three of the syllabus.
 {¶ 32} It is clear that the error in this case is highly significant, because it relieved the state of part of its burden of proof. A criminal defendant has a due process right that requires the state to prove every element of the crime beyond a reasonable doubt. In re Winship (1970),397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368. In this case, the state was not required to prove all the elements of the crime of aggravated burglary because the jury was not informed of all the elements of the crime. Allowing criminal convictions to stand in which multiple elements of the crime were not explained to the jury certainly undermines the perceived fairness of criminal judicial proceedings. Nevertheless, under the facts of the instant case, we cannot say that the error was so prejudicial that the result of the case would have been different if the error had not occurred. The landlord testified that Appellant had *Page 11 
no right to be in the apartment, was not part of any lease agreement, was not recognized as a tenant, did not pay rent, and was specifically forbidden to even visit the apartment. Stoddard herself testified that she had called the police earlier that day to remove Appellant from the apartment, indicating a termination of any privilege or permission for him to reside there. She removed the hidden key that Appellant previously used to enter the apartment. She also had reasonable explanations why Appellant's belongings were present in the apartment, since he was not a resident. She explained that they had ended their relationship, but that she retrieved his belongings from an apartment on Ogden Street where they had previously intended to live together. The jury had substantial evidence to support the conclusion that Appellant knew or should have known that he was no longer welcome in the apartment and would be treated as a trespasser if he entered the apartment, even if they were not specifically instructed this was necessary.
 {¶ 33} As regards Appellant's criminal state of mind to commit an assault as an element of the crime of aggravated burglary, the record contains substantial evidence to show that he had the criminal intent to commit an assault. Ms. Stoddard reported, at the time the offense occurred, that Appellant kicked her in the head and was trying to kill her. Medical evidence showed that her wound was likely caused by the kick in the head. Further, Appellant had been involved in an altercation earlier that day with Ms. Stoddard's ex-husband, Mr. Richard Stoddard. Richard testified that he was in a fist fight with Appellant and knocked him out. (Tr., p. 115.) Ms. Stoddard testified that, while the crime was occurring, Appellant said: "See what *Page 12 
Richard [Stoddard] did to me? Now, you're gonna get yours." (Tr., p. 102.) The jury could have reasonably concluded that Appellant went to Ms. Stoddard's apartment to punish her after being injured in a fist fight with her ex-husband or to punish her for banishing him from the apartment.
 {¶ 34} Reevaluating all the factors of the plain error test, as directed by the Ohio Supreme Court's holding and analysis inWamsley, supra, 117 Ohio St.3d 388, 2008-Ohio-1195, 884 N.E.2d 45, we conclude that plain error did not occur in this case. Appellant's third assignment of error is overruled.
 {¶ 35} We will now evaluate Appellant's remaining assignments of error that were originally considered to be moot in our prior opinion.
 Assignments of Error Nos. One and Two {¶ 36} "DEFENDANT/APPELLANT'S CONVICTION FOR AGGRAVATED BURGLARY IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE BECAUSE THE STATE FAILED TO PROVE THE OFFENSE OF TRESPASS WHICH IS A REQUIRED ELEMENT OF THE OFFENSE OF AGGRAVATED BURGLARY."
 {¶ 37} "DEFENDANT/APPELLANT'S CONVICTION OF AGGRAVATED BURGLARY IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AS THE STATE FAILED TO PROVE THE UNDERLINING CRIMINAL OFFENSE (OF ASSAULT) WHICH IS A REQUIRED ELEMENT OF THE OFFENSE OF AGGRAVATED BURGLARY."
 {¶ 38} In determining whether a verdict is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and *Page 13 
all reasonable inferences and determine whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. State v. Thompkins (1997), 78 Ohio St.3d 380, 387,678 N.E.2d 541. "Weight of the evidence concerns `the inclination of thegreater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other.'" (Emphasis sic.) Id. In making its determination, a reviewing court is not required to view the evidence in a light most favorable to the prosecution but may consider and weigh all of the evidence produced at trial. Id. at 390.
 {¶ 39} In reviewing a criminal case for manifest weight of the evidence, the reviewing court acts as a "thirteenth juror," so to speak, as it examines the evidence. Id. Nevertheless, a reviewing court must continue to bear in mind that determinations of witness credibility, conflicting testimony, and evidence weight are primarily for the trier of fact to determine. State v. DeHass (1967), 10 Ohio St.2d 230,227 N.E.2d 212, paragraph one of the syllabus. Where there are two reasonable views of the evidence, we accede to the interpretation that supports the jury verdict. State v. Gore (1999), 131 Ohio App.3d 197,201, 722 N.E.2d 125.
 {¶ 40} In these two assignments of error, Appellant argues that the state did not prove beyond a reasonable doubt that a trespass or assault occurred, and that these two crimes are underlying elements of aggravated burglary. We have already set forth the elements of aggravated burglary, and the relationship of the crimes of trespass and assault to the specific charge of aggravated burglary in this case. *Page 14 
 {¶ 41} Appellant's primary argument is that he had a privilege to be in Stoddard's apartment, and could not have been convicted of trespassing in that apartment because part of the definition of aggravated burglary is that he entered or remained on the premises of another without privilege. R.C. 2901.01(A)(12) defines privilege as:
 {¶ 42} "[A]n immunity, license, or right conferred by law, bestowed by express or implied grant, arising out of status, position, office, or relationship, or growing out of necessity."
 {¶ 43} It is generally true that a tenant cannot be prosecuted for trespassing in the leased property: "[B]ecause * * * [the] current tenant * * * had a right to enter and occupy the premises, he could not be found liable for either criminal trespass or burglary." Radvansky v.City of Olmsted Falls (C.A.6, 2005), 395 F.3d 291, 304. Appellant contends that the evidence clearly shows that he had a right to be in Stoddard's apartment. He points out that she kept a spare key hidden for him so that he could enter when she was not at home. Ms. Stoddard testified that he was free to come and go as he pleased. She testified that they had been in a longstanding relationship, and that he had spent the night in the apartment for four or five nights preceding the alleged burglary. Stoddard also testified that Appellant helped pay the deposit on the apartment. There was evidence that some of Appellant's possessions were in the apartment, such as a television and a video cassette recorder.
 {¶ 44} We do not consider this evidence to undermine the remaining evidence that Appellant had no right or privilege to be in the apartment. The record reflects *Page 15 
that Stoddard removed the spare key, and had called the police to remove Appellant from the apartment. The landlord had no information that Appellant was helping to pay for the apartment, and moreover, he stated that Appellant was not welcome to even visit the apartment. Appellant's name is not on any lease because there was no written lease agreement. Further, there is ample evidence that an assault took place. Ms. Stoddard told the EMT who was attending to her injuries that she had been attacked by her ex-boyfriend, and her injuries were consistent with injuries that would occur if she had been kicked in the head. The evidence placed Appellant at the scene of the crime. Stoddard's landlord saw Appellant forcibly break open the door to her apartment. The evidence established a motive for the crime; revenge because Stoddard had recently broke up with Appellant or because her ex-husband knocked him out in a fist fight earlier that day. There is no manifest injustice in the jury's verdict, and Appellant's first and second assignments of error are overruled.
 Assignment of Error No. Four {¶ 45} "THE TRIAL COURT COMMITTED PLAIN ERROR BY FAILING TO INSTRUCT THE JURY ON THE LESSER INCLUDED OFFENSE OF BURGLARY IN VIOLATION OF OHIO REVISED CODE SECTION 2911.12(A)(4), A FELONY OF THE FOURTH DEGREE."
 {¶ 46} Appellant raises yet another error relating to the jury instructions. Appellant did not object to the jury instructions, and as explained above, this error will be reviewed only for plain error. Appellant argues that burglary is a lesser included *Page 16 
offense of the more serious crime of aggravated burglary, and that the trial court should have given the jury an instruction as to the elements of burglary.
 {¶ 47} Aggravated Burglary is defined in R.C. 2911.11(A) as:
 {¶ 48} "(A) No person, by force, stealth, or deception, shall trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, when another person other than an accomplice of the offender is present, with purpose to commit in the structure or in the separately secured or separately occupied portion of the structure any criminal offense, if any of the following apply:
 {¶ 49} "(1) The offender inflicts, or attempts or threatens to inflict physical harm on another[.]"
 {¶ 50} Burglary is defined in R.C. 2911.12(A) as:
 {¶ 51} "(A) No person, by force, stealth, or deception, shall do any of the following:
 {¶ 52} "(1) Trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, when another person other than an accomplice of the offender is present, with purpose to commit in the structure or in the separately secured or separately occupied portion of the structure any criminal offense;
 {¶ 53} "(2) Trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure that is a permanent or temporary habitation of any person when any person other than an accomplice of the *Page 17 
offender is present or likely to be present, with purpose to commit in the habitation any criminal offense;
 {¶ 54} "(3) Trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, with purpose to commit in the structure or separately secured or separately occupied portion of the structure any criminal offense;
 {¶ 55} "(4) Trespass in a permanent or temporary habitation of any person when any person other than an accomplice of the offender is present or likely to be present."
 {¶ 56} The burglary statute sets forth four types of burglary that may occur. The first three types all require proof of a trespass and proof that the defendant had purpose to commit "any criminal offense" during the trespass. The first three types of burglary are second and third degree felonies. The fourth type of burglary does not require proof of any additional crime being committed, and it is a fourth degree felony. R.C. 2911.12(C).
 {¶ 57} An offense is considered to be a lesser included offense of another if the lesser offense carries a lesser penalty; the greater offense cannot, as statutorily defined, be committed without the lesser offense, as statutorily defined, also being committed; and if some element of the greater offense is not required to prove the commission of the lesser offense. State v. Deem (1988), 40 Ohio St.3d 205, 209,553 N.E.2d 294; State v. Barnes (2002), 94 Ohio St.3d 21, 25-26,759 N.E.2d 1240. Although a crime may constitute a lesser included offense, a jury instruction on a *Page 18 
lesser included offense is only required where the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction on the lesser-included offense. State v. Carter (2000),89 Ohio St.3d 593, 600, 734 N.E.2d 345.
 {¶ 58} We have previously held that burglary is a lesser included offense of aggravated burglary. State v. Hess, 7th Dist. No. 02 JE 36,2003-Ohio-6721. The key difference between the two crimes is that, in aggravated burglary, the state also must prove that the defendant inflicted, attempted to inflict, or threatened to inflict physical harm on another. R.C. 2911.12(A).
 {¶ 59} "If under any reasonable view of the evidence it is possible for the trier of fact to find the defendant not guilty of the greater offense and guilty of the lesser offense, the instruction on the lesser included offense must be given. The evidence must be considered in the light most favorable to defendant." State v. Wilkins (1980),64 Ohio St.2d 382, 388, 415 N.E.2d 303.
 {¶ 60} There is no reasonable view of the evidence in which Appellant could have been found not guilty of aggravated burglary but guilty of burglary. It is true that Ms. Stoddard attempted at trial to recant a number of statements she had made at the time the crime occurred. When the crime occurred, she made statements that Appellant was attempting to kill her and that he had "kicked the hell out" of her. (Tr., p. 48.) At trial, though, she attempted to explain her injuries as somewhat self-inflicted, caused by her confusion as she reacted to a perceived intruder in the dark while she was half asleep. Yet, she did not recant every statement she had made. *Page 19 
She admitted at trial that Appellant said to her, "See what Richard [Stoddard] did to me? Now you're gonna get yours." (Tr., p. 102.) There is no evidence contradicting the fact that Appellant, at minimum, threatened Ms. Stoddard, even if he was not solely responsible for her injuries or the extent of her injuries. In order to sustain the conviction for aggravated assault, the state needed to show only a threat of physical harm, as well as criminal purpose to commit a crime other than the initial trespass. If the crime occurred at all, it occurred because Appellant directed some type of threat of harm at Ms. Stoddard, and this threat established the additional elements of aggravated burglary that are not part of ordinary burglary. The evidence can only be reasonably interpreted to support the charge of aggravated burglary. Therefore, no jury instruction on burglary was required. Appellant's fourth assignment of error is overruled.
 Assignment of Error No. Five {¶ 61} "DEFENDANT/APPELLANT WAS DENIED A FAIR TRIAL DUE TO THE CUMULATIVE EFFECT OF THE ELEVEN [sic] ASSIGNMENTS OF ERROR AS SET FORTH HEREIN."
 {¶ 62} Appellant argues that multiple errors occurred at trial, and that the added effect of the multiple errors requires a reversal of the conviction. The cumulative error doctrine recognizes that multiple errors, which may not individually require reversal, may collectively act to violate a defendant's right to a fair trial. State v.DeMarco (1987), 31 Ohio St.3d 191, 31 OBR 390, 509 N.E.2d 1256, paragraph two of the syllabus; State v. Madrigal (2000),87 Ohio St.3d 378, 397, 721 N.E.2d 52. *Page 20 
As we have not found multiple harmless errors here, the cumulative error doctrine is inapplicable. See State v. Garner (1995), 74 Ohio St.3d 49,64, 656 N.E.2d 623. Appellant's fifth assignment of error is without merit.
 {¶ 63} We have determined that no plain error occurred in the trial court's failure to instruct the jury on the mens rea element of trespass, or in its failure to instruct the jury on the elements of the underlying crime of assault, as part of the court's overall instructions on the crime of aggravated burglary. We do not find any error in the lack of a jury instruction regarding lesser included offenses. Finally, the conviction is not against the manifest weight of the evidence. Because we reject all of Appellant's arguments, we hereby affirm his conviction and sentence in full.
Vukovich, P.J., concurs.
DeGenaro, J., concurs in judgment only. *Page 1