DECISION *Page 2 
{¶ 1} Ronald J. Kruthaupt appeals from the Hamilton County Juvenile Court's entry that approved and adopted a magistrate's decision. We conclude that the trial court properly approved the decision regarding the custody of Noah Kruthaupt, so we affirm that part of the judgment. But because the trial court erred in approving the magistrate's decision with respect to Kruthaupt's visitation time with Noah, we reverse that part of the judgment and remand the cause for a hearing on the issue of overnight visitation.
 {¶ 2} Noah Kruthaupt was born on August 26, 2005. His parents, Ronald Kruthaupt and Sybil Jordan, were not married at the time of his birth. Kruthaupt and Jordan ended their relationship in October 2005, after Jordan was arrested for domestic violence against Kruthaupt. Following Jordan's arrest, Noah was temporarily placed with Jordan's mother, and Kruthaupt was not permitted to see him. Jordan was eventually found guilty of disorderly conduct.
 {¶ 3} On October 20, 2005, Kruthaupt filed a petition in juvenile court for custody of Noah. In the alternative, Kruthaupt sought shared parenting with Jordan or liberal parenting time with Noah.
 {¶ 4} Attempts at settlement and mediation were made while the case was pending. In the meantime, Kruthaupt was permitted, first, supervised and, then, unsupervised visits with Noah. Eventually, the parties agreed to a schedule that allowed Kruthaupt to have parenting time with Noah for six hours during the day from Monday through Thursday and for 5.75 hours each Sunday. As Noah got older, Jordan permitted Kruthaupt to have Noah overnight twice a month. *Page 3 
 {¶ 5} During the hearing on the petition for custody, Kruthaupt presented evidence that Jordan did not have stable employment or residences, that Noah did not have his own room at Jordan's apartment, and that Jordan had refused to have Noah vaccinated. Jordan countered that Kruthaupt had been diagnosed with bipolar disorder in the past, that Noah's pediatrician respected her desires regarding vaccinations, that Noah would be vaccinated when he was going to go to school, and that Kruthaupt had been convicted of driving under the influence in 2007. Jordan also stated that Kruthaupt was violent. Jordan testified that, while she did not believe that Noah was old enough to spend more than one night away from her at a time, she had agreed to the twice-monthly overnight visits that were currently taking place, and that she anticipated that the overnight visits would be increased to three when Noah was three years old.
 {¶ 6} Dr. Charles Handle, a psychologist, also testified at the hearing. Dr. Handle had worked with Kruthaupt and Jordan as they tried to mediate the custody and parenting-time issues. He stated that he had worked with them to establish the overnight visits. He also testified that he had not observed any overt psychological problems with either parent. According to Dr. Handle, Jordan was a very organized person who liked routines and was very emotional. Kruthaupt, in Dr. Handle's opinion, was also very emotional and self-centered.
 {¶ 7} After the hearing, the parties submitted written closing arguments. The magistrate then issued a decision. In it, he found that both parents wanted custody of Noah; that Noah had bonded well with both parents; that Noah was well adjusted in both parents' homes; that Jordan was overly emotional and immature; that Kruthaupt was self-centered and immature; that both parents would likely honor and facilitate court-ordered parenting time; that Kruthaupt was current on his child-support *Page 4 
obligations; that Jordan had been convicted of disorderly conduct; that Jordan's testimony about Kruthaupt's violent nature was incredible; and that Jordan had not denied Kruthaupt parenting rights. The magistrate went on to conclude that neither parent was unfit, and that both parents had significant problems. But on balance, the magistrate concluded, since Noah had been in his mother's custody since birth (except for ten days following her arrest), any change in his living situation would be more harmful than beneficial to Noah.
 {¶ 8} The magistrate, therefore, ordered that Jordan would maintain custody of Noah. He also ordered that the six-hour visits Monday through Thursday and the 5.75-hour visits on Sundays would continue until Noah was in kindergarten. At that time, the magistrate ordered, visitation would take place according to the Hamilton County domestic relations court standard parenting order. The magistrate also ordered that Kruthaupt would have visitation with Noah for six hours on New Year's Day, President's Day, Memorial Day, Veteran's Day, and Thanksgiving Day in even-numbered years, and on Martin Luther King, Jr., Day, Easter, July 4th, and Labor Day in odd-numbered years. Kruthaupt was permitted visitation on every Christmas Day and Father's Day. Finally, the magistrate ordered that each parent would be permitted an extended period of time with Noah for 16 consecutive days. The magistrate later amended the decision to permit Kruthaupt to have access to Noah's school and medical information.
 {¶ 9} Kruthaupt filed objections to the magistrate's decision. He argued that the magistrate had applied the wrong law, that the magistrate had abused his discretion when he awarded custody to Jordan, and that the magistrate had abused his discretion when he ordered the visitation schedule. After a hearing on Kruthaupt's objections, the *Page 5 
trial court denied the objections and approved the magistrate's decision. This appeal followed.
 {¶ 10} In his first assignment of error, Kruthaupt asserts that the trial court improperly considered his petition for custody under R.C. 3109.04(E)(1)(a). We disagree.
 {¶ 11} Under R.C. 3109.042, "[a]n unmarried female who gives birth to a child is the sole residential parent and legal custodian of the child until a court of competent jurisdiction issues an order designating another person as the residential parent and legal custodian." Although Jordan had custody of Noah, the magistrate had to consider both parents on equal footing when ruling on Kruthaupt's petition for custody.[1]
When allocating parental rights, the magistrate had to determine what would be in Noah's best interest.[2] In determining Noah's best interest, the magistrate was to consider all relevant factors, including those factors listed in R.C. 3109.04(F)(1).
 {¶ 12} In his decision, the magistrate acknowledged the applicability of R.C. 3109.042. He then made findings regarding the R.C. 3109.04(F)(1) factors. After considering the statutory factors, the magistrate discussed the parenting abilities of Jordan and Kruthaupt. He then stated, "I find that Noah has been in custody of mother since birth. I find that Father has had significant time with Noah[,] but when [Noah] goes to sleep at night, mother puts him to bed. When [Noah] gets up in the morning, mother is there. I believe that to grant custody to father,the harm that would be caused would outweigh the advantage to the changein environment" (Emphasis added.) *Page 6 
 {¶ 13} Kruthaupt argued before the trial court and continues to argue here that the last sentence in the foregoing quotation indicates that the magistrate was applying the wrong law. The language is similar to language in R.C. 3109.04(E)(1)(a), which applies to the modification of a prior decree that has allocated parental rights. Under that section, if parental rights have been allocated in a decree, before modifying the decree, the trial court must find that there has been a change in circumstances, that the modification would be in the best interest of the child, and that one of three factors applies. The third factor is that "[t]he harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child."[3]
 {¶ 14} Kruthaupt argues that the magistrate's language demonstrates that, rather than considering the parties on equal footing, the magistrate had placed a greater burden on Kruthaupt. But we conclude that the language itself does not indicate that the magistrate had improperly shifted the burden. Rather, the language reflects the testimony of Dr. Handle that "disrupting what has been a consistent care-taking relationship would have its risks and problems[.]" The magistrate properly considered the potential effect of the disruption on Noah, in addition to the R.C. 3109.04(F)(1) factors. The magistrate did not apply the wrong law, and the trial court properly overruled Kruthaupt's objection on that basis. The first assignment of error is overruled.
 {¶ 15} Kruthaupt's second assignment of error is that the magistrate's allocation of parental rights was an abuse of discretion.[4] "The term `abuse of discretion' connotes more than an error of law or of judgment; it implies that the court's attitude is *Page 7 
unreasonable, arbitrary or unconscionable. "[5] We cannot conclude that the magistrate's award of custody to Jordan was an abuse of discretion. It is clear from the record that the magistrate carefully considered what would be in the best interest of Noah.
 {¶ 16} We do, however, conclude that the magistrate's decision as to the visitation schedule was an abuse of discretion. Jordan, Kruthaupt, and Dr. Handle all testified that the overnight visits between Kruthaupt and Noah were successful. Jordan even stated her willingness to increase the number of overnight visits as Noah got older. The only dispute was about whether the visits should be limited to one night at a time. The magistrate did not include any overnight visits in his decision. We conclude that, given the testimony, this was an abuse of discretion. We therefore sustain the second assignment of error to the extent that it takes issue with the trial court's failure to order overnight visitation.
 {¶ 17} The judgment of the trial court is reversed with respect to overnight visitation. In all other respects, the trial court's judgment is affirmed. And the cause is remanded for further proceedings consistent with the law.
Judgment affirmed in part and reversed in part, and cause remanded.
HENDON, P.J., and CUNNINGHAM, J., concur.
[1] R.C. 3109.042.
[2] R.C. 3109.04(B)(1).
[3] R.C. 3109.04(E)(1)(a)(iii).
[4] See Miller v. Miller (1988), 37 Ohio St.3d 71, 74,523 N.E.2d 846.
[5] Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219,450 N.E.2d 1140, citing State v. Adams (1980), 62 Ohio St.2d 151,404 N.E.2d 144. *Page 1